Campbell, Chief Justice,
delivered the opinion of the court:
The plaintiff sues for an amount alleged to be due on account of transportation furnished by plaintiff and its connecting carriers upon bills of lading covering certain camp equipment and impedimenta, the same being property of the United States. For this transportation the plaintiff submitted to the officers of the Government its several bills wherein its charges were computed upon certain rates claimed by the carrier, but from the bills the Auditor for the War Department made deductions and disallowances be *183 cause he denied the application of the rates claimed and he applied to the bills plaintiff's tariff rates applicable to the transportation of “household goods and emigrants’ movables.”
The plaintiff had on file with the Interstate Commerce Commission a schedule of rates, filed May 9, 1916, in force from and after September 7, 1916, and during the time the shipments in question were made. Included in this schedule of rates were stated “ Ordnance and quartermaster’s stores, Government freight,” followed by words “ Camp equipage; minimum weight, 30,000 pounds,” and “All other articles, comprising ordnance and other munitions of war — not including camp equipage or baggage — carload, minimum weight 30,000 pounds,” giving both classes the rate “ class A, net cash.” In other words, the plaintiff had filed with the Interstate Commerce Commission a schedule of rates which were applicable alone to certain Government property, and now contends that it is entitled to the rates stated in this schedule without land-grant deductions. Both parties admit, and indeed this court has heretofore held in several cases, that the deductions made by the auditor under what he held to be the applicable rate, namely, “emigrants’ movables,” etc., were erroneous.
We hold that a railroad company can not by filing a schedule of rates with the Interstate Commerce Commission avoid the effect of the statutes making, or authorizing, grants of land in aid of the railroad upon terms stated in such statutes. This proposition is not denied by the plaintiff, but is admitted in its brief in the following language: “A carrier can not simply by publishing and filing with the Interstate Commerce Commission a ‘ net cash ’ rate (meaning without land-grant deduction) nullify the land-grant statutes.” And while conceding that the Government at all times and in any case is entitled to the lowest tariff rate “ open to the public,” less land-grant deductions, or (to use its language) “in other words, is entitled to make land-grant deductions from any rate open to the public,” the plaintiff contends that “ whenever there is no rate open to the general public (as there is no rate on camp equipage and military impedí- *184 menta) and the carrier publishes a special rate for the Government, expressly stipulating that such special rate is ‘ net cash ’ — not subject to land-grant deductions, and the Government ships property of the character mentioned, without demanding a different rate and without repudiating the special rate published or offered, then the Government is bound on an implied contract to pay the rate named.”
The court can not yield assent to this contention. There is no statute requiring, or even providing for, the publishing by a transportation company of a schedule of rates or a “ special rate ” ' applicable alone to Government property; but there is a requirement that a schedule or tariff of rates be published that are open to the public. In the latter case, the tariff is binding on both carrier and shipper, and is sufficient notice to the shipper of the rate after it has been filed and published as required. But in the former case, the filing, voluntarily, of a special rate as being applicable alone to Government property does not, and should not, charge its shipping officers with any constructive notice of a rate thus stated. Obviously plaintiff’s contention would enable the carrier to. avoid the effect of the land-grant statute by the simple device of “publishing and filing” a tariff schedule applicable in terms to Government property and not open to the public. Whatever the effect of filing tariff schedules may be upon individuals and other shippers, the provisions of the act to regulate commerce are not binding in that regard on the Government, which may stipulate for other or lower rates than the schedules provide. The plaintiff’s brief speaks of land-grant deductions “from any rate open to the public,” referring, we assume, to the statutory rule that the compensation to land-aided roads “shall be computed upon the basis of the tariff or lower special rates, for like transportation, performed for the public at large,” with appropriate land-grant deductions.
It is not suggested by plaintiff that the Interstate Commerce Commission is empowered to fix rates binding on the Government. See Cincinnati, N. O. & Tex. Pac. Ry. Co. v. Interstate Commerce Commission, 162 U. S. 184 and 28 I. C. C. 184, 524. But in view of statements in the briefs as *185 to the action, of this court in some cases heretofore decided we mention some of these.
In A., T. & S. F. Ry. Co., No. 33681, decided December 1, 1919, there was a stipulation as to the facts, and, among other things, it was stipulated, and so found, that “the freight under these bills moved upon special expedited passenger train service.” As to the larger part of the bills involved there was a special contract, and as to items mentioned in three of the bills it was stipulated that there was a class or commodity rate provided for each of the articles in the carrier’s tariffs. Emphasis was laid upon the meaning of the terms “emigrants’ movables” and “household goods,” those being the classifications under which the auditor made deductions from the bills, and of which the carrier was complaining. Nothing in that case adds support to the plaintiff’s contention here.
In A., T. & S. F. Ry. Co., No. 34457, decided March 14, 1921, there was an agreed statement of facts, and it appeared that the items claimed, or some of them, were originally included in the petition in No. 33681, supra, and all of them involved the same question. The carrier had submitted its bills “ based upon its published tariff rates, being the usual class and commodity rates open to the public,” with appropriate land-grant deductions. The bills were accordingly paid as rendered, and deductions were subsequently made by the auditor on the basis of rates applicable to “ emigrants ’ movables” and “household goods.”
In Bush, Receiver of Missouri Pacific Ry. Co., No. 34466, decided March 7, 1921, it appeared that the carriers had duly filed classifications of freight which embraced, among other things, articles stated as “ emigrants ’ movables,” with a note describing same, and also had an item (1468) applying to Government freight stated as “ camp equipage, carloads, minimum weight 30,000 pounds,” with a rate stated as “A net cash ” and “ all other articles, comprising ordnance and other munitions of war, not including camp equipage or baggage, carload minimum weight 30,000 pounds” with a rate for less than carloads of “regular classification and tariff, subject to land-grant deductions,” and for carloads a rate stated as class A “ net cash.” The fact was found that *186 the term “net cash” was interpreted to mean “without land-grant deductions.” It further appeared that as to three of the bills the articles were listed in detail, and that in the other three bills the property was listed as “camp equipment,” “ property of troops changing stations,” “ troop property,” “equipment” or “troop property and equipment.” In the settlements the bills were subjected to deductions upon the basis of shipments entitled to “emigrants’ movables” classification as well as land-grant deductions. The only pertinency of the case to the point involved in the instant case is the action of the court as to those items in the three bills which took the classification under item 1468, Government freight.
As to these items the facts showed, and were so found, that “ it is not possible at. this time to determine the separate articles that went to make up the shipments ” in these items, and that it was open to' the shipping officers “ to pack, mark, weigh, and list the various items and procure with reference thereto the specific classification applicable to- each article with proper land-grant deduction,” and that the classification claimed by the carrier was the only one applicable to the shipments as billed. In these circumstances the court adopted the only rate shown in the record or that could equitably be applied, since the shipping officer had loaded the articles in the cars and billed them as stated, while neither the carrier nor the court could determine the separate articles, and the rate did not appear to be an unreasonable one.
The case of Maine Central Railroad Co., No. 34666, decided March 7, 1921, presented substantially the same question as the one last above mentioned.
In St. Louis, Brownsville & Mexico Ry. Co., No. 34697, decided February 27, 1922, submitted upon an agreed statement of facts, which were incorporated in the court’s findings, the deductions complained of were based upon the classification of the shipments as “ emigrants’ movables and household goods.”
In a still later case, Northern Pacific Ry. Co., No. 34014, decided November 6, 1922, the question of tariff schedules and land-grant deductions was presented in several forms. *187 There was a stipulation of the facts. It appeared that the property consisted of shipments of stamped post cards, stamped envelopes, and stamped newspaper wrappers belonging to the Government, transported during three different periods, as follows: (1) During the years 1913, 1914, 1915, and until September 1,1916; (2) during the time elapsing between September 1, 1916, and January 25, 1917, and (3) the period subsequent to January 25, 1917. The carrier presented its bills accruing during the first period at the “ net first-class rate without land-grant deduction,” and from these bills land-grant deductions were made by the accounting offices, and this was followed by the court. Its bills accruing during the second period were based upon its supplement No. 2 to the Western Classification No. 54, I. C. C. 12, effective September 1, 1916, in which it was stated that Government stamped envelopes, postal cards, and wrappers “ when shipped for account of the United States Government, on Government bills of lading, in cars protected by Government locks or seals, carload minimum weight 30,000,” should take first-class rate. The deductions made by the auditor were not disturbed. Its bills during the third period were based upon its other Supplement No. 5 to the Western Classification No. 54, whereby it altered its Supplement No. 2 to the extent of providing that the first-class rate should be “ net cash,” this being accomplished by adding these two words after the “ carload ” weight mentioned above. As explanatory of these supplements, the stipulation showed that they were filed in compliance with a ruling of the Interstate Commerce Commission made June 29,1916, in case No. 7963, United States v. Alabama & Vicksburg Railway Co. et al., wherein the commission ruled that first-class rates were just and reasonable to apply to the kinds of property mentioned and “ ordered that the defendants, including claimant,” maintain and apply rates not in excess of those applicable under the first-class rating under the classifications governing, “ which said rates are found to be reasonable.”
This court gave judgment for the amount of the bills accruing during the third period — that is, the period following the last supplement.
*188 It would prolong this opinion beyond reasonable compass to discuss in detail each of the foregoing cases or to compare them with the large number of .other cases in which questions of deductions have been involved. It is manifest that each of the cited cases was decided upon the facts peculiarly applying to it and without any attempt to lay down a principle applicable to all alike. In one of the cases there was an express contract, in another a special service, and in others facts taking them out of the general rule. Two of the cases now pressed upon our attention are Bush, Receiver of Missouri Pacific Ry. Co., supra, and Northern Pacific Ry. Co., No. 34014, supra. In the first of these the court applied the rate claimed by the carrier because it had to adopt some rate or deny all compensation, and, as already stated, the Government bills of lading did not specify the property so that it could be classified. It was therefore deduced that the shipping officer must have intended to contract for a special service at the tariff rate.
In, the Northern Pacific Company case, No. 34014, supra, the court gave judgment for the items accruing during the third period above stated, based upon the carriers’ Supplement No. 5. The rate had been the subject of controversy before the Interstate Commerce Commission and was decided to be reasonable. Whilst this fact does not necessarily exclude the right to make appropriate land-grant deductions, it appeared, in addition to that ruling, that the cars were “ locked or sealed by the Government ” and were so under its control as in the court’s judgment to amount to a special service. In no case has it been the intention to exclude land-grant deductions, unless it was reasonably deducible from the facts that there was a contract, or a special service provided for and rendered, or an expedited service, or shipments accompanying a troop movement.
The filing of a schedule of rates stated to be applicable to Government property and to be “ net cash ” does not prevent the application of land-grant deductions, or place on the Government the burden of proof as to whether the rate so stated applies to particular shipments. Where its application is sought and land-grant deductions are objected to *189 tbe carrier must sbow such a state of facts as will reasonably remove the shipment from the operation of the general rule that land-grant deductions must be made. In the instant case there is no such showing, and so far as it appears it was an ordinary freight movement.
The Army appropriation acts have for some years carried provisions authorizing payment out of the appropriation to land-aided roads, and in some cases authorizing the Secretary of War to determine the proper rate to be paid, and also provisions relative to the effect of the acceptánce of the payment. These provisions are not involved in the instant case. The court has decided in several cases the classification which certain Government property should take under properly filed tariffs. A., T. & S. F. Ry. Co., No. 33681; Missouri Pac. R. R. Co. Case, 56 C. Cls. 341. In those cases the evidence was sufficient to sustain the conclusion. The shipments in question were subject to appropriate land-grant deductions, but the record does not contain sufficient data from which to determine either the proper classification or the land-grant deduction. The petition should therefore be dismissed. And it is so ordered^
Graham, Judge; Hat, Judge; DowNey, Judge; and Booth, Judge, concur.