Campbell. Chief Justice,
delivered the opinion of the court. .
The railroad company claims, and the evidence establishes, that its bills as stated by if were paid by the Government’s disbursing officer, and afterwards the Auditor for the Navy Department in settling the disbursing officer’s accounts checked these payments and made deductions therefrom which were subsequently collected by the disbursing officer’s making deductions of similar amounts from other proper bills of the railroad company. The basis of these deductions as made by the auditor was that the rates charged for transporting the armor plate were, higher than the commodity rate fixed in the railroad company’s tariff schedule. It appears that the rates under the commodity-tariff effective on the company’s and connecting lines at the time of the shipments were 75 cents per hundredweight from Munliall and South Bethlehem to Oakland Wharf on iron and steel plates, these articles being given specific rates, but the tariff schedule also carried a note to the effect that the list enumerated only such articles as were given specific rates, and this list included beams, braces, columns, girders, plate, etc. The note also stated that articles not specified would take class rates. A further note on the tariff was to *288 the effect that the stated rates under head of “ Iron and steel articles ” would not apply on certain quartermaster and ordnance stores, mentioning armor plate, deck plates, conning towers, and-others, as to which the note said: “ Class rates will apply on the above-mentioned articles.” The class rate if applied to the armor plate was more than the rate actually charged by the railroad company. The commodity rate, if armor plate be given the rate mentioned for beams, girders, plate, etc., would be less than the rate actually applied, and the rate actually applied was that agreed upon before the shipments were made. We have held that a railroad company can not by merely filing a schedule of tariff rates, naming a rate applicable to Government property, bind the Government to pay rates higher than those open to the public for a similar service. It was then said: “ There is no statute requiring or even providing for the publishing by a transportation company of a schedule of rates or a special rate applicable alone to Government property.” Illinois Central R. R. Co. case, 58 C. Cls. 182. The tariff in question expressly provides that certain enumerated articles took the commodity rate while others would take the class rate, but armor plate was not mentioned among the articles given specific rates. The auditor ruled that the armor plate should have the rates given to beams, braces, columns, girders, plate, etc., in the list, and therefore should be classified with these articles which took the commodity rate. The question of classification is, under the view we take, practically eliminated and need not be discussed further than to say that whatever the proper classification should be, if that were the question, we think that the tariff in question by the second note above mentioned intended to exclude Government armor plate from the commodity rate on iron and steel plate and therefore to leave such armor plate without a specific rate. But, as already said, the company can not by merely distinguishing between property of an individual and Government property establish a rate binding on the Government.
In the instant case, however, there was an agreed rate for a special service. See Missouri Pacific R. R. case, 56 C. Cls. *289 341. In calling for proposals for transporting the armor plate the Bureau of Supplies and Accounts in their notice clearly indicate that their understanding was that the freight schedule for armor for transcontinental shipment was at that time a class rate mentioned in their call for bids and not a commodity rate. They desired a cheaper rate. (See Finding IV.) It was stated in the call for bids that a number of the plates would require “ special drop girder cars in order to transport them across the continent” and that in awarding the contract special allowance would be made to the railroads furnishing “ the required equipment for these heavy plates.” Structural steel and wood cradles bolted to the car at the works of the manufacturer were to be used and the bidder was required to agree that these cars would be returned as soon as possible after delivery of the armor without charge to the Government and without charging freight for any part of the cradle so bolted to the car. In addition to this, the call for bids indicated that consideration would be given them in guaranteeing quick delivery of armor and quick return of empty drop-girder cars. Plaintiff’s agents in submitting'its bids for the service, one from Munhall and the other from South Bethlehem to San Francisco and then to Mare Island, responded to this feature. This was the, service which was called for and bid upon. The rate named by the carrier was acceptable to the bureau. The shipments moved as contemplated and the bills, based upon the agreed rate, were paid. There is no basis for the defense of the statute of limitations. The deductions complained of were made from subsequent bills of the plaintiff. Its original bills having been paid it had no complaint until these deductions were made. When this occurred its right of action first accrued, but this did not occur until 1920, or about that time. The Government offers no further defense, and we think it clear that the plaintiff should recover judgment for the special service at the rate agreed upon.
Judgment for plaintiff in the sum of $33,826.37. And it is so ordered.
GRAham, Judge; Hat, Judge; Downey, Judge; and Booth, Judge, concur. .