Booth, Judge,
delivered the opinion of the court.
■ The plaintiff company, in pursuance of a written agreement, furnished transportation for certain officers and enlisted men, together with camp impedimenta and animals, from Fort Sheridan, Ill., to Winchester, Va. The service required was specified in detail in the agreement, and the company met all the requirements of the contract. Payment for the service was in time, upon proper presentation of bills therefor, duly made by the disbursing quartermaster in the full amount stipulated in the written agreement. Thereafter the Auditor for the War Department, in reviewing settlements made by the disbursing quartermaster, disallowed certain sums from said allowance upon the theory that the following clause in the contract authorized the same, viz:
“ The above rates are net cash and not subject to further deductions unless it be subsequently found that they are in excess .of regular tariff rates less land-grant or other lawful deductions to which the Government is entitled, when the lower rate will govern in settlement, except when special passenger-train service is called for and furnished.”
Subsequently the amount so disallowed was deducted from sums due the plaintiff for other and distinct transportation services in no way connected with this. The plaintiff duly protested and declined to accept the depleted payment as aforesaid.
This case differs in no essential particular from the cases of Bush, Receiver, v. United States, 52 C. Cls., 199, and Atchison, Topeka & Santa Fe R. R. Co., v. United States, 256 U. S., 205. The defendant contracted for a special expedited service, a service not usually furnished in the ordinary movements of the public or maintained in its regular train schedules. It is, of course, obvious that no express mention is made of a desire to obtain a specially expedited service, but the context of the agreement calls for such a service, a movement on a special train, made up in an unusual way. transporting freight, impedimenta, and live animals on a passen *389 ger train. In fact, the whole movement, from its inception to its close, unmistakably indicates an intention upon the part of the defendant to obtain a special service by special agreement. It would result in manifest injustice to subject an express contract under the circumstances narrated to arbitrary deductions under the wording of the reservations contained in the clause relied upon. The defendant was undoubtedly entitled to the same rights and privileges as set forth in the regular tariff rates as respects transportation charges, but can it be said that this precautionary reservation can be so enlarged as to warrant an application of the regular tariff rates to a service especially contracted for, under special circumstances, and unusual in character ? Why the necessity, if such be the case, of entering into a contract with respect to the same? It must be admitted in this case that the railroad company would not have been required under regular tariff to furnish the service it did furnish. Nothing stood in the way of the defendant, if it so desired, to avail itself of the customary mode of transportation furnished to the general public under the regular tariff rates, duly published. The execution of a written contract for the service, if it rises to no greater dignity than an ordinary shipment, was a meaningless performance. What the defendant ■wanted was a special service, set forth in minute detail in the contract. That was what the defendant received, and we perceive no legal reason for denying its enforcement. As well said in the Bush, Receiver, case, supra:
“ With full knowledge, or at least charged with knowledge that there were such rates, the United States chose not to apply for them, but to enter into a written contract with the plaintiff whereby other rates were fixed. It is too late now for the United States to undertake to profit by deducting from the plaintiff’s claim the difference in the rates. It is difficult to understand why the defendant should be given any greater consideration than any other party to a contract. It will not be said that if this same contract had been made with a private individual that he could have broken it, and insisted upon a lower rate, when he had never applied for it. and never even complied with the conditions which were published to the world and which were necessary to be complied with in order that he might benefit by them. The United States is in no better • position. Indeed, when the *390 United States enters into a contract they are as much bound by its terms as is an individual. Deming’s case, 1 C. Cls., 190, 191; Wilson’s case, 11 id., 513, 520; Southern Pacific Co.'s case, 28 id., 77; Lyon’s case, 30 id., 353, 360; County of Clay v. Society for Savings, 104 U. S., 579, 586. We do not think that the plaintiff should suffer or lose under this contract, and it is entitled to recover the full amount sued for.”
Judgment is awarded the plaintiff in the sum of $991.51. It is so ordered.
Graham, Judge; Hay, Judge; Dowhey, Judge; and Camp-beIjL, Chief Justice, concur.