Graham, Judge,
delivered the opinion of the court:
This case arises out of certain land-grant deductions made by the accounting officers of the Government in settlements with the plaintiff extending over a period from some time in the year 1914 into the year 1917, for “ penny scrip ” books and “ mileage ” books obtained by the representatives of the defendant from the agents of the plaintiff with the coupons of which tickets for transportation were secured over the plaintiff’s lines either in whole or in part. The said books were paid for according to the usual custom existing, and which had existed for many years, by the representative of the defendant executing and delivering to the plaintiff’s agents requests for transportation naming the person who was to obtain the contract and kind of book desired. In every case the representative of the defendant by the use of these coupons secured tickets calling for standard first-class adult fares. These books were of two kinds; one of them contained two thousand five hundred (2,500) coupons with the value printed thereon of 1 cent each, the coupons being denominated in the tariffs and contracts relating thereto as “ penny scrip.” The other kind contained one thousand (1,000) coupons with the printed value of 2-| cents each to pay for 1 mile of travel, and this form in the contracts and tariffs was denominated “ mileage book.” The price fixed by the contracts and tariffs for each was $20. Those purchasing these books by asking for them secured $25 worth of travel for $20. There were certain conditions printed upon the books of each kind. Among other things it was provided that the ticket should be purchased with the scrip in advance of travel except where there were no agencies at stations open for the sale of tickets at train times, in which case train' conductors were authorized to honor the coupons; that the book of coupons was not transferable and should be used by only one person, the purchaser, who should sign on all coupons when same were honored in either of said ways, and that the coupons should be used within one year from the date of the purchase of the book; that the books should be signed by the person obtaining the same and the plaintiff’s ticket sellers by whom they were *628 issued. A number of these books were purchased by the representatives of the defendant and used in the manner required.
Part of the plaintiff’s line was subject to land-grant conditions and the tickets purchased with these coupons were used for transportation over said land-grant portion of plaintiff’s road.
When the book in each case became exhausted, under the contract it was deliverable and in each case it was delivered to the ticket seller or conductor of the plaintiff and in turn it was attached to the bill for transportation which was presented. In each case bills were presented without land-grant deduction to either the disbursing officers of the Army or Navy or to the Auditor for the War Department or the Auditor for the Navy Department. Some of these bills were paid by disbursing officers. Thereafter the Auditors of the War or Navy Departments revised said bills and made 50 per cent deductions over land-grant portions of the fares and collected the amount thereof by deducting them from other settlements made thereafter for other transportation furnished by the plaintiff. The amount of the deductions so made, after deducting the bills which could not be located (Finding VI), amounting to $151.07, and discrepancies totaling $5.06 (Finding VII), is $4,388.83.
Where the transportation was furnished to the Navy Department the plaintiff accepted and received payment for the balance of its bill, after land-grant deductions had been made, and filed no protest or objection. In some instances where payments were made bills were presented by the plaintiff without deducting the proper amount for land-grant deduction. This deduction was made by the disbursing officer before payment. In none of the cases was there an appeal to the Comptroller of the Treasury from the settlements by the disbursing and accounting officers.
There are two questions raised on the facts, namely, first, whether land-grant deductions were lawfully made by the accounting officers; and second, whether the plaintiff while accepting payment of its bills with deductions without protest made, as was the case in the payments by the Navy Department, has barred itself from a recovery. The facts do *629 not show when these deductions were made and consequently how long the plaintiff waited after the settlement before bringing its action. However, as this case is viewed by the court, it is unnecessary to pass upon this latter question, as the conclusion on the first one is decisive of the plaintiff’s right to recover.
The plaintiff is claiming here that by reason of the special provisions of the contracts which enabled the purchaser of these books to secure $25 worth of travel for $20 with certain requirements such as that they could only be used by the person purchasing them, were only good for one year, and other provisions, that it was a special contract or special arrangement for transportation and under the decisions of this court the Government would be bound by it. The plaintiff’s attorney in his brief cites numerous decisions of this court and it may be well to briefly review them.
There are only two cases cited which deal with the question of land-grant deductions, namely, Yazoo & Mississippi Valley Railroad Co. v. United States, 54 C. Cls. 165, and Atchison, Topeka & Santa Fe Ry. Co. v. United States,.256 U. S. 205.
In the case of Bush, Receiver, 52 C. Cls. 199, the question involved was whether the Government, which had contracted in writing with the plaintiff for a given rate, was bound by its contract, although there was a lower special rate in force. The court held that the Government could contract for a higher rate and if it did so was bound by its contract.
In the case of the Southern Pacific Co. v. United States, 53 C. Cls. 332, the Government applied for a specially expedited service, a special train. The plaintiff agreed to furnish it at certain rates and representatives of the Government accepted the terms and entered into a formally executed contract to this effect. Plaintiff performed the service. The court held that where the Government had applied for and secured a special rate for a special service and there was no public service akin to it, it was bound by its contract.
In the case of the Los Angeles & Salt Lake R. R. Co. v. United States, 55 C. Cls. 305, the Government requested special, expedited service and it was performed under exclusive direction and control of Government officers. The *630 plaintiff had published and claimed a special rate for such service to the defendant and this was known to the defendant and no objection was raised at the time of the service. It was held that the Government was bound by its contract.
The case of the Baltimore & Ohio R. R. Co. v. United States, 56 C. Cls. 384, was a contract also for special, expedited service by special agreement. The court held that the defendant had contracted for special, expedited service, a service not usually furnished in the ordinary movements of the public or maintained in its regular schedule and that the Government was bound by its contract.
As to the two cases involving land-grant deductions, that of Atchison, Topeka & Santa Fe Ry. Co. v. United States, supra, was a case where services had been rendered without prior contract or special agreement. Accounting officers proceeded on the theory that the collectible rate should be determined by combining the party rate for a part of the distance and the individual rate for the remainder and then making necessary land-grant deductions, and not by taking the through individual rate less any deductions arising from land grant. The court held that the accounting officers erred, that the service requested and rendered was a through service, and that the only rate which' was applicable was a through individual rate, and that by requesting and accepting the service without special arrangement for a different rate the Government assented to and became obligated to pay the through individual rate, and that the only obligation on the part of the railroad under the circumstances was that of serving the Government at rates no higher than those applicable to individuals for like transportation less any lawful land-grant deductions.
As to the case of the Yazoo c§ Mississippi Valley R. R. Go., supra, it has no bearing upon the issue here. In the case at bar the Government secured transportation upon the same terms and conditions applicable to individuals. In the case of the Yazoo & Mississippi Valley R. R. Co.,, supra, the order was for equipment' for movement in expedited service, the Government’s bill of lading bearing the following indorsement: “Charges based on minimum weight of 30,000 lbs. per car.. Special train service requested and furnished.” *631 The service rendered was a special expedited service under exclusive control and direction of the Government, trains being run as fast as consistent with safety and having the right of way over ordinary freight trains and frequently over passenger trains, trains being held at certain points by direction of the Government, but at all times under its control. The plaintiff had a specially published rate that it would charge for such special and expedited service as was ordered and rendered, rates which were not published to the public, the particular service not being required by or applicable to the public. The Government, with knowledge of the rate, ordered the service without stipulating any other rate or objecting to the proposed rate. The court held that it was manifest that the Government could not and did not expect that the special service contracted for would be rendered at regular tariff rates, and that it should be held to its contract for the special service and should pay the special rate. In that case the court said: “ The court does not hold that a railroad company, by issuing or publishing a rate or filing a tariff, can nullify the land-grant laws,” but that “ where the Government contracts with reference to a particular service it is bound by its contract.”
In the case at bar the question to be considered is whether the Government received special service at a special rate, different from that which the public would have had to pay for similar service.
These “ penny scrip ” and “ mileage ” books, with the terms upon which they were sold, were issued under authority of the Interstate Commerce Commission, and the rates were published rates, and open to the public, as they were to the defendant. While they were hedged about with certain limitations and conditions, these limitations and conditions applied to the public as well as to the Government. The only difference was that the public paid for the books in cash and the Government paid for them with requisitions, which was the usual and accepted method of payment between the parties, and in any event they were received and accepted by the plaintiff at the time of the purchase.
The defendant requested no special or expedited service and received none. It received the same service under the *632 same conditions which were open to the public. The rate was a published rate open to the public and not confined in its use or arranged or published exclusively for shipments by the Government. The railroad received the same compensation from both. It is to be presumed that the railroad put these tariffs into effect as a business measure either for additional gain or convenience to itself. It was at no greater expense to furnish more or different equipment or employees and ran its trains under its own control on the same schedule in the case of the Government that it did in the case of the public. Had the defendant purchased tickets without the issue of these books, paying the full fare for the lowest rate open to the public — that is, $25 for $25 worth of travel — it would have been entitled unquestionably to a deduction of $12.50 on account of land grant. Is it to be said that it purchased these tickets with full knowledge of this fact with the understanding and by contract that it was to pay $20 instead of $12.50, though it received no service other than that received by the general public, no special train, no expedited service, no control over the movements of the trains by the Government? The inducement to purchase these books was voluntarily held out by the railroad. The rates and the conditions were not requested by the defendant. The railroad offered in its published rates this inducement to the public, a reduced rate upon conditions of purchase in advance of use, and defendant, as it had a right to do, accepted the proposal as did the general public. It is proper to presume that the railroad received just the benefit which impelled it to hold out the inducement. The Government accepted the plaintiff’s proposal, complied with its terms, and received just the service contemplated, being the same which the general public received. The railroad knew that the Government was entitled to land-grant deductions when the rate was the same as given to the general public.
The plaintiff is not entitled to recover and judgment should be entered dismissing the petition, and it is so ordered.
Hay, Judge; Downey, Judge; Booth, Judge; and Campbell, Chief Justice, concur.