Campbell, Chief Justice,
delivered the opinion of the court:
The plaintiff bases its claim for the refund of land-grant deductions upon the requirements in certain party rate tariffs of cash at the time tickets are furnished with no land-grant deductions from the rates fixed in such tariffs. Its contention is that the requirement of cash payments excludes any idea of land-grant deductions from charges at party rates. But this contention can not be upheld. Nor can the Government be excluded from taking the tariff rates less land-grant deductions. The plaintiff, when the transportation was furnished, did not stand upon the cash requirement, but, as initial carrier, issued the necessary tickets and sent in its bills for the transportation to the disbursing officer on a credit basis. The Government from the very nature of things can not be required to deal with the railroads on a cash basis for transportation. The ticket agents are unable to figure out land-grant deductions, and it would take time and delay to have the rates figured out by experts. The law contemplates that payments by the Government shall be made only after the bills have received the approval of certain designated officials. The bills must go through a regular routine inspection. This court held in Louisville & Nashville R. R. Co. v. United States, 58 C. Cls. 622, that failure of the Government to pay. cash for tickets, as required by certain tariffs in force, did not relieve the company from land-grant deductions. See also Illinois Central R. R. Co. v. United States, 58. C. Cls. 182.
As to the items growing out of so much of the transportation as was between Montgomery and Camp Sheridan and between Hattiesburg and Camp Shelby, we can not agree with the contention that there was any special or expedited sendee contracted for on the one hand, or an additional special service provided for in the tariffs on the other hand. The tariffs provided for a through rate to Montgomery or to Hattiesburg as the case may be, and also provided that in constructing through rates to the camps in question certain amounts and distances should be added to the published rates to Montgomery or Hattiesburg. The amount to be added for individual fare is settled and the amount for per *892 capita party of ten or more on one rates are stated for the benefit of the connecting lines as well as for the public. When constructed on the prescribed basis, the rates would be those at which the individual or party would be entitled to transportation to the point of destination, one of the camps. The accounting officers have proceeded in such cases upon the view that the reference to “special train service” under the heading in the tariff of “ Division requirements ” is a matter between the carriers themselves and provides for the absorption by the terminal carrier of the minimum requirement on account of the special train service, when the revenues exceeded the-minimum requirement, and the taking care of this minimum requirement by other carriers where the revenue is not equal to or in excess of this minimum. It seems to us the view of the accounting officers is the more reasonable one. Certainly the rate provided for an individual or for a party of ten or more individuals would apply to the individual or party, and these would not have to pay more because of the stated “special train service.” Nor does the Government have to pay more than these party rates. There was no special or expedited service contracted for.
As to the switching charge from Montgomery to Camp Sheridan, the tickets on which the troops moved called for and ended at Montgomery. The plaintiff is entitled to be paid for the additional transportation from Montgomery to the camp.
Judgment for plaintiff in the sum of $120.
Hay, -Judge; Dowhey, Judge; and Booth, Judge, concur.