Booth, Chief Justice,
delivered the opinion:
The plaintiff railroad company was incorporated under the laws of Missouri. The petition in this case is for the recovery of $3,885 alleged to be due the plaintiff for switching service, a sum in excess of the regular and established rate for transporting 10,697 soldiers from point of origin to destination. The facts are as follows:
Military Junction is a point on the main line of plaintiff’s road, between Fort Smith and Argenta, Arkansas. Camp Pike, a military training camp, was located about 4.54 miles northwest of Military Junction, and from Military Junction to Camp Pike the plaintiff constructed a connecting line of road to obtain traffic to and from the camp. During the month of November, 1917, the plaintiff company transported over its own and connecting lines 10,697 passengers from Camp Pike to Camp Beauregard, Louisiana. The transportation was accomplished via Military Junction and required the use of 259 cars, including coaches, baggage, and sleeping cars. In order to supply the requested service the plaintiff assembled the requisite equipment in its yards at Little Rock, Arkansas, and switched the same up to Camp Pike for inspection. If it passed inspection the troops were taken on board and moved through without change to Camp Beauregard, the plaintiff trains carrying the troops to Alexandria, Louisiana, at which point they were turned over to the Louisiana Railroad & Navigation Company, this line carrying them direct to Camp Beauregard. The switching charge claimed as due originates in the alleged switching services set forth above and set out more fully in Finding XI.
*660 The plaintiff company is a free land-grant road under the acts of February 9, 1853 (10 Stat. 155), and July 28, 1866 (14 Stat. 838), from Little Rock, Arkansas, to Tex-arkana, Arkansas. At the time, however, when the services claimed for were performed the plaintiff was operating under the act of October 6, 1917, a statute passed during the war granting to free land-grant roads fifty per centum of the established commercial charges for performing a similar service by roads not coming within the land-grant provisions of the acts cited. It is not disputed that the rate paid by the Government was a through rate nor that the service furnished was a through service. It originated at Camp Pike and was accomplished by through trains of the plaintiff to Alexandria, Louisiana, at which point the Louisiana Eailroad & Navigation Company took over the same to destination. It was essential to assemble equipment at a near-by point to Camp Pike and transport the same to the camp in order to obtain the traffic for the plaintiff’s road. Of course, this particular service was what might properly be termed special, in that it was not such a service as obtained daily, but no claim is made for special train service. No such service was requested or furnished. If a single passenger applied for transportation from Camp Pike to the same destination involved herein, he could have purchased the same at the established through rate, although he would have had to travel from Camp Pike to Little Eock on a “ shuttle train ” and at the latter station embark on one of the company’s regular trains.
What the plaintiff is claiming is not in its essence a switching charge but a surcharge. There was no switching done which can be said to be a factor of the through service rendered. The traffic was not interchanged at Military Junction or Little Rock. No cars were “ switched ” to other trains. The movement was continuous. The case is decidedly different from one where the plaintiff received cars from other roads at the junction point or Little Eock and was to “ switch ” them into the camp, a distinct switching service. Here the service seems to be no more than preliminary steps to make up trains sufficiently equipped to accomplish the requested service.
*661 The plaintiff rests the case on its circular No. 1917-332 •dated August 1, 1917. This circular quotes switching charges as follows:
“ For handling loaded passenger equipment, between Military Junction, Ark. (near Dalhoff, Ark.), and Camp Pike (Cantonment Camp No. 12) the switching charge of fifteen ($15.00) dollars per car (coach, sleeping, or baggage car), in addition to the revenue accruing on tickets. These charges include switching the empty equipment to or from Camp Pike (Cantonment Camp No. 12).”
It is to be noted that the circular was not authorized or filed with the Interstate Commerce Commission and from its terms clearly indicates the charge as a surcharge, a charge “ in addition to the revenue accruing on tickets.” Government officers are without authority to contract for rates higher than those tendered to the public in duly published and authorized tariffs. A mere publication of a rate applicable only to the Government is not binding upon the Government. Illinois Central Railroad Co. v. United States, 58 C. Cls. 182, 184. Special charges may be agreed to. Missouri Pacific Railroad Co. v. United States, 56 C. Cls. 341, 349. In this case no agreement appears. The Quartermaster General’s assent to plaintiff’s contention, as appears from the findings, was expressly based on the fact that plaintiff’s mileage involved was 100 per centum land grant. In the case of St. Louis, Brownsville & Mexico Railway Co. v. United States, 58 C. Cls. 619, 621, this court in effect held that the act of October 6, 1917 (40 Stat. 361), is to be read into the equalization agreement, wherein the roads situated as plaintiff were to be paid for transportation upon the 50 per centum basis prior to October 6, 1917, and after the declaration of war, and obviously the Quartermaster General was agreeing to a basis of pay without the above change of rates in view. We say this because the letter closes with this significant language:
“ 1. On account of the free land grant of the lines entering Little Eock, Arkansas, the line receiving the road haul would get practically no revenue for the service performed.”
This case is not one where the service has been rendered and not paid for. It is conceded that a tariff fare-has been *662 paid through from point of origin to destination, and in this-respect differs from the case of the Louisville & Nashville Railroad Co. v. United States, 59 C. Cls. 886, 892 affirmed 278 U. S. 321. In the above case “the tickets on which the troops moved called for and ended at Montgomery,” and the. switching charges allowed were for a service in addition. to that already paid for. In other words, when the passengers' involved in the above case were transported to Montgomery the transportation service requested had been accomplished and, of course, was to be paid for, but additional transportation was essential to remove the passengers from Montgomery to Camp Sheridan, and this company furnished it. Clearly this was additional to the transportation requests. In this case no complaint is lodged that the plaintiff was not paid all that was due under the tariffs filed with the Interstate Commerce Commission and under the land grant laws and the equalization agreements. The through rate established is presumed to be compensatory, and if it were not it was the plaintiff’s privilege to have increased its through fares accordingly by filing new tariffs with the Interstate Commerce Commission. The court can not undertake to pass upon the reasonableness of a rate or fare duly filed with the commission. No jurisdiction to do so obtains. The petition will have to be dismissed. It is so ordered.
Williams, Judge; Littleton, Judge; and GreeN, Judgey concur.
Whaley, Judge, did not hear this case and took no part, in its decision.