**Ernest Samuel NOSSEN and E. S. Nossen Laboratories, Inc.**

v.

**The UNITED STATES.**

**No. 350–61.**

United States Court of Claims.

March 20, 1970.

---

David Toren, New York City, atty. of record, for plaintiffs. McGlew & Toren, New York City, of counsel.

Martin Avin, Washington, D. C., with whom was Asst. Atty. Gen., William D. Ruckelshaus, for defendant. Roland A. Anderson and John A. Horan, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## ON PLAINTIFFS' MOTION FOR REHEARING

PER CURIAM.

Following the decision of this court, 416 F.2d 1362, 189 Ct.Cl. 1, (1969), that the patent claims were invalid and that the suit under Title 28 U.S.C. § 1498 (1964) must be dismissed, the plaintiffs have made a timely motion for rehearing under Rule 151. The motion must be and is denied for the reasons that follow:

Our conclusion that the claims were invalid rested entirely upon anticipating disclosures by a German scientist, a Dr. Gewecke, in a patent which the German patent office issued to him in 1932, No. 556,882, and in two articles Dr. Gewecke published in the German technical press in 1934 and 1936. Defendant relied on other prior art but we did not pass upon it because the Gewecke disclosures were considered decisive. Plaintiffs now say in their motion that we misconstrued Dr. Gewecke's writings, though before us in admittedly accurate translations, and that his disclosures were different from what we thought. To determine whether plaintiffs set forth adequate grounds under Rule 151 it is necessary to go back to the original trial of the case and trace events from that point.

Defendant offered the Gewecke patent and articles in evidence in course of presenting its case after plaintiffs had rested. Defendant's expert witnesses testified what they thought Gewecke's meanings were and the nature of the processes he disclosed. The individual plaintiff Dr. Nossen, had testified in chief, but was not asked about the Gewecke disclosures and gave no testimony on that subject. Plaintiffs' rebuttal testimony was brief and did not allude to Gewecke. Dr. Nossen did not take the stand again.

In this connection, the record shows that Dr. Nossen was a native German and that he was awarded a Ph.D., degree in chemistry in Breslau in 1929. He also studied in Berlin and Charlottenberg. He applied for a German patent as early as 1932. He was employed up to 1936 by a German company, being stationed in Berlin and Copenhagen, apparently under the same employer in both places. In 1936 he entered employment in the Netherlands and in the early 1940's Hitler deprived him of German citizenship. He was apparently in exile during World War II, and first came to the United States in 1948. He organized the plaintiff corporation in 1950. It follows that Dr. Nossen was a fellow chemist in Germany with Dr. Gewecke at the time when Gewecke was awarded his patent and at the time of the first Gewecke article.

Commissioner, now Judge, Donald E. Lane, after hearing the testimony, filed

a recommended opinion and findings with the court which, respecting Gewecke, substantially foreshadowed the conclusion the court ultimately came to. The briefing and oral argument that followed before us revealed that the parties were far apart as to what Gewecke had disclosed.

By order of January 24, 1968, the court remanded the case to Commissioner Lane for further findings on the validity of the patent in suit, and on the issue of infringement insofar as that question may depend upon the further discussion and finding on validity. The order continues as follows:

> * * * The further opinion and findings should elucidate the similarities and differences between the patent in suit and the Gewecke publications, including (but not limited to) the bearing of these similarities and differences on the plaintiffs' contentions that (a) the patent in suit does, and the Gewecke publications do not, teach the "subjection" (rather than the mere heating) of the metal nitrates to a temperature higher than their decomposition temperature, and that this difference in treatment makes a patentable difference in result, and (b) that the plaintiffs' process is applicable to a large number of metals while that of the Gewecke publications is applicable only to a few. The commissioner has leave, in his discretion and if he deems it necessary or desirable to allow the parties to present further evidence and/or further argument, written or oral.

Commissioner Lane's subsequent supplemental opinion and findings revealed that plaintiffs moved on May 13, 1968, that no further trial sessions be had and that no further evidence be adduced. The result was that Commissioner Lane made his supplemental report without the benefit of additional evidence.

The record reflects that Dr. Nossen himself would well qualify as an expert and that he could not but possess a knowledge of the state the art of chemistry had reached in Germany in 1932, that could be matched by few other persons indeed who might be brought before this court today.

Our asserted misconstruction of the Gewecke process or processes (we do not exclude the possibility there might have been more than one) is that we stated at page 6 (slip op., 416 F.2d at 1366), that the "agitated bed" of Gewecke was: "continuously maintained at a temperature at or above the temperature of thermal decomposition of aluminum nitrate, say 180° C.," (reference is made to the description of Gewecke's processes in the original opinion, which need not be repeated here, to explain the relevance of this). Plaintiffs' counsel says that after publication of our decision he submitted to 22 scientists of his acquaintance the full text of the Gewecke patent together with his own explanation of it and ours, without indicating which one favored his litigation position. He heard from 17, who all agreed that his interpretation was correct. Copies of their letters are attached as exhibits to the motion.

The interpretation thus unanimously endorsed was that Gewecke's "agitated bed" was really a moving conveyor, such as a screw conveyor, which moved cold particles past a spraying station where hot aluminum nitrate solution was sprayed upon them, after which the particles went to a decomposer where the decomposition of the aluminum nitrate was consummated by heat.

This is the first time any conveyor, screw or otherwise, has been heard from in this proceeding. Without the aid of expert testimony it would be impossible for this court to determine whether the explanation is more credible than the one put forth by defendant's experts and adopted by us. Some of the responses show that it is difficult for anyone to interpret a German patent of 1932 vintage without actual knowledge of the state of the art in Germany at that time. Apparently, according to them, the Gewecke patent is an example of a style of presentation in which a great deal is left unsaid, relying on the read-

er's extrinsic knowledge. That is, supposedly, why he omitted to mention the conveyor. We note, however, that only one of the 17 respondents was actually a practicing chemist in Germany at the German patent date, 1932. In this respect Dr. Nossen himself appears to possess a marked advantage over counsel's pollees.

It seemed apparent to us when we entered the order, *supra*, that further inquiry as to what Gewecke meant would require further testimony by plaintiffs which, of course, defendant would have to be given an opportunity to rebut. This is what the court expected to happen and invited when making its order of remand to the commissioner, *supra*. Plaintiffs had their chance then to show, if they knew, what Gewecke meant. Plaintiffs' counsel does not even now specifically offer, in fact, anyone for the witness stand, saying that plaintiffs would make the "authors" "available for cross examination, *e.g.*, by interrogatories."

Defendant says, with much justice, as it appears to us, that plaintiffs' principal theory at all times up to the date of our decision was that Gewecke was unintelligible, absurd, or hopelessly ambiguous. Such explanations as were offered appeared to us to be meant more to ridicule Gewecke than to elucidate him. This furnishes a natural explanation why plaintiffs kept to themselves the clear and coherent explanation of Gewecke which they now tender to the court.

Under such circumstances a motion under Rule 151 cannot prevail. Only recently in General Elec. Co. v. United States, 416 F.2d 1320, 1321, 189 Ct.Cl. 116, 117, (1969), the court said:

> * * * Where a new and separate issue is raised *for the first time* in the court's opinion * * * a petition for reconsideration (or other post-decision relief) addressed to that question will be approached hospitably because the parties may not have had * * * opportunity to argue or litigate the point. * * * But where a party adversely affected by the court's deci-

sion on the issue has had fair notice that the question may well be in the case, has had a fair chance to present its position, has failed to do so, and gives no sufficient excuse for its failure, a demand for post-decision relief will normally be rejected. We point out specifically that a new issue or subject can be raised by queries from the bench, and counsel should be alert to this, * * *. (Emphasis in original).

Another recent case is Henneberger v. United States, 407 F.2d 1340, 187 Ct.Cl. 265 (1969). See also, Kaiser Aluminum & Chem. Corp. v. United States, 409 F. 2d 238, 245, 187 Ct.Cl. 443, 456–457 (1969) (concurring opinion), where the Chief Judge said for himself and 3 other judges:

> *    *    *    *    *    *

> Any court is necessarily concerned when a responsible attorney alleges that it has reached an incorrect result because of a mistaken determination of the facts of a case. However, the facts in any litigation must be decided on the basis of the evidence produced by the litigants in that particular case. It may well be that if the case were retried, the Government could present a stronger and more effective defense, but to make a litigation an open-end proposition jeopardizes the confidence which litigants can place in a court's ability to render a final judgment. * * *

Plaintiffs' efforts to explain why it reserved such important information until this motion now before us are unpersuasive, particularly in view of the fact that the court's remand specifically informed the parties that we desired more information about Gewecke's process or processes.

Defendant of course still insists that our interpretation of Gewecke was supported by all the testimony in the record and was correct. In view of the foregoing it is unnecessary to consider whether the interpretation we arrived at, with the light we had, was correct or not. It is also unnecessary to consider whether in-

quiries in the nature of a poll are a proper method of supporting and substantiating a motion under Rule 151. As we have indicated, we believe that plaintiffs' present theory necessarily presupposes that the court needs to be informed concerning the state of German technology in 1932. Any party believing this should properly have come forward with testimony to show what the state of that technology was. In considering the motion we have given the plaintiffs the benefit of assuming that was what they now propose to do, although it is difficult to say so with certainty. The affidavit of plaintiffs' counsel and the exhibits which are the responses of his pollees seem to operate in some kind of limbo between a demonstration of fact and a conclusion of law.

Plaintiffs' motion for rehearing is denied and the dismissal of the petition will stand.