**PENNCO TRUCKING INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 238–89C.**

United States Claims Court.

May 30, 1990.

John W. Chierichella, Washington, D.C., for plaintiff. Merrie C. Shager, Jones, Day, Reavis & Pogue, Washington, D.C., and Samuel L. Andes, Andes & Vaughn, Lemoyne, Pa., of counsel.

Hillary A. Stern, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## OPINION

NETTESHEIM, Judge.

This common carrier rate case is before the court after argument on cross-motions for summary judgment. The parties contest plaintiff's entitlement to payment for special transportation services rendered to the Government. Their dispute centers both on the adequacy of the annotations on Government Bills of Lading to reflect the provision of special services and the applicability of a reduced rate for government traffic.

## FACTS

The following facts are undisputed, unless otherwise noted. Pennco Trucking In- corporated ("plaintiff"), a common carrier, engaged in a series of agreements with the Department of the Army, Military Traffic Management Command (the "MTMC"), New Cumberland Army Depot ("NCAD"), to provide freight transportation services between January 1, 1984, and March 15, 1986. The substantive details of these agreements are reflected in the tenders accepted by the MTMC and in the pertinent Government Bills of Lading ("GBL's"). NCAD awarded tenders, or Guaranteed Traffic Awards, to plaintiff. A tender is offered by a common carrier on Optional Form 280, "Uniform Tender of Rates and/or Charges for Transportation Services." The tender covering plaintiff's service from NCAD to Dover Air Force Base, Delaware ("Dover AFB") during the period January 1, 1984, through December 31, 1984, is Tender PENC No. 28.

The specific transportation services provided to NCAD are designated as Air Line of Communication ("ALOC") services. ALOC transportation requires highly specialized equipment to load and unload cargo. The transportation route spanned between NCAD and Dover AFB. Tender PENC No. 28 applied to this transportation route and required plaintiff to provide special equipment, exclusive use, and expedited services (sometimes referred to in this opinion as "special services") at no additional charge. These additional requirements became effective through a reference on the face of Tender PENC No. 28. Transportation services continued under the auspices of this agreement until December 31, 1984, when Tender PENC No. 28 expired.

After Tender PENC No. 28 expired, NCAD requested that plaintiff continue rendering special ALOC transportation services on an interim basis. This interim period (Period No. 1) lasted from January 2, 1985, until February 6, 1985, when plaintiff discontinued providing special services. Plaintiff resumed providing special services on February 9, 1986 (Period No. 2), per NCAD's request after the other carrier selected by the MTMC ceased providing ALOC transportation services between

NCAD and Dover AFB. However, plaintiff ceased providing special services on March 15, 1986, when the instant dispute arose. Plaintiff contends that it agreed to provide special services on both occasions in return for payment of Interstate Commerce Commission ("ICC") rates for such services as set forth under its tariff ICC PENC 200–B. This tariff was in effect from January 1, 1985, through March 31, 1986. The parties disagree concerning the applicability of specific tenders and the meaning of annotations on the GBL's for the ALOC freight.

Two tenders did not provide for special services or otherwise apply to ALOC freight. At issue regarding Period No. 1 is the applicability of Tender PENC No. 88. Similarly, the parties disagree whether Tender PENC No. 136 applied to Period No. 2. Although the parties agree that, if applicable, Tender PENC Nos. 88 and 136 would provide a conduit by which NCAD might receive additional services through a separately published tariff, they part company as to whether the right to these additional services exists subject to the rate structures of Tender PENC Nos. 88 and 136, or whether NCAD specifically must avail itself of this right by paying the rate in the applicable tariff and, if so, the calculation of that rate.

The parties are in accord as to the applicability of ICC PENC 200–B during both periods. The parties further agree that ICC PENC 200–B provides for special equipment, expedited service, and exclusive use. Defendant asserts that ICC PENC 200–B, Item 30, §§ 1, 2, and 4 require that when payment for expedited service or exclusive use is to be made, the request for these special services must be in writing and attached or referred to or inserted on the GBL's. Plaintiff replies that the notation of "ROLLER BED ORDERED & FURNISHED," which appears on the face of the GBL's, constituted a request for specialized services as understood and agreed to by the parties.

Plaintiff billed, and NCAD paid, $196,779.67, for special services over the two time periods in dispute, although defendant makes the point that plaintiff billed based upon a TL (truckload) class 65 rate, which is not specified in Item 30 of ICC PENC 200–B. An audit conducted by the General Services Administration ("GSA") concluded that Tender PENC No. 88 controlled the freight rates during Period No. 1, that Tender PENC No. 136 determined the rates during Period No. 2, and that plaintiff had been overpaid for the special services. As a result of this determination, at GSA's direction, NCAD withheld $138,097.28 from invoices due and payable to plaintiff. Plaintiff took exception to GSA's conclusions and filed suit in the Claims Court on April 28, 1989, to recover $138,097.28 deducted from other billings and $107,000.00 billed but not paid, plus interest per ICC PENC 200–B.

## DISCUSSION

### I. *Summary judgment standards*

Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. RUSCC 56(c). Only disputes over material facts, or facts that might significantly affect the outcome of the suit under the governing law, preclude an entry of judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if the evidence would permit a reasonable jury to return a verdict in favor of the non-movant. *Id.* Both plaintiff and defendant, as the moving parties, have the burden of establishing that there are no genuine material issues in dispute and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

In the capacity of opposing each other's motion, plaintiff and defendant have the burden of providing sufficient evidence, not necessarily admissible at trial, to show that a genuine issue of material fact indeed exists. *Celotex*, 477 U.S. at 322, 324, 106 S.Ct. at 2552, 2553. In resolving the cross-motions, the court cannot weigh the evidence and determine the truth of the mat-

ter on summary judgment. *Anderson,* 477 U.S. at 249, 255, 106 S.Ct. at 2510, 2513. Any evidence presented by the opponent is to be believed and all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S.Ct. at 2513. Uncontested material facts also have been found consistent with the rule that, in respect of any facts that may be considered as contested, each party, in its capacity as the opponent of summary judgment, is entitled to "all applicable presumptions, inferences, and intendments." *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

Two issues are appropriate for resolution on the parties' cross-motions. The first is whether Tender PENC Nos. 88 and 136 applied during the respective claim periods of January 2, 1985, to February 6, 1985, and February 9, 1986, to March 15, 1986 (Period Nos. 1 and 2, respectively). The second is whether plaintiff adequately annotated its GBL's to reflect the provision of special equipment, exclusive use, and expedited service. Alternatively, this issue can be framed as whether plaintiff has supplied sufficient evidence in lieu of annotated GBL's. Assuming that the court finds plaintiff is due to be paid more than the applicable rates under Tender PENC Nos. 88 and 136, the issue that cannot be resolved on summary judgment is the calculation of plaintiff's charges under the applicable rate in ICC PENC No. 200–B.

II. *The applicability of Tender PENC Nos. 88 and 136*

Plaintiff alleged in its complaint that Tender PENC No. 88 expired prior to this period on August 14, 1984, since the solicitation that NCAD published in the *Commerce Business Daily* provided this date as an automatic expiration. Defendant made a showing in its moving brief that Tender PENC No. 88 by its terms was in effect during Period No. 1 from May 23, 1984, through May 23, 1985. Defendant also showed that Tender PENC No. 88 applied to freight originating at NCAD. Plaintiff did not respond to this argument. As a consequence plaintiff's challenge to the applicability of Tender PENC No. 88 is deemed abandoned. *See Nossen v. United States,* 189 Ct.Cl. 1, 17–18, 416 F.2d 1362, 1371 (1969) (failure to brief and argue erroneous exclusion of evidence before appellate court deemed abandonment of point), *reh'g denied,* 191 Ct.Cl. 198, 422 F.2d 1340, *cert. denied,* 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970).

■ Tender PENC No. 88 constituted a continuing offer to perform transportation services for stated prices. *Western Truck Lines, Ltd.,* B–148465, B–148615, 43 Comp. Gen. 54, 59 (1963). As a continuing offer, Tender PENC No. 88 gave NCAD the power to make a series of separate contracts by a series of independent acceptances. That power existed in NCAD until it was effectively revoked by the offeror. *William S. Richards,* B–172243, 51 Comp.Gen. 541 (1972) (citing *Corbin on Contracts* § 38 (1964); *Williston on Contracts* § 58 (3d ed. 1937); *Restatement of Contracts* § 44 (1932)).

■ To be effectively revoked, the revocation must be communicated to and received by the offeree. *United States v. Sabin Metal Corp,* 151 F.Supp. 683, 687 (S.D.N.Y.1957), *aff'd,* 253 F.2d 956 (2d Cir. 1958). Section 20(e) of Tender PENC No. 88 provides that the carrier must give written notice of not less than 30 days before revocation can be effective. Such "written notice" means a communication received by the offeree. *See NLRB v. Vapor Recovery Sys. Co.,* 311 F.2d 782, 785 (9th Cir.1962); *United States v. Continental Casualty Co.,* 245 F.Supp. 871, 873 (E.D.La.1965). The solicitation published by NCAD in the *Commerce Business Daily* does not constitute a revocation by plaintiff, as offeror.

When plaintiff's declarant took the position that Tender PENC No. 136 had been returned to plaintiff and never accepted by NCAD, defendant responded with evidence that Tender PENC No. 136 had been resubmitted, with both the original and MTMC receipt stamped May 28, 1985, and a second receipt stamped June 14, 1985. Defendant also submitted the Declaration of Julian Jolkovsky, Traffic Management Specialist,

Headquarters, Inland Traffic Directorate, Transit/Tariff/Classification Branch, of the MTMC. Mr. Jolkovsky averred:

> PENC Tender No. 136 was received at Headquarters, MTMC on 28 May 1985. On 5 June 1985 one copy of the original tender was returned to the carrier for correction because it was not clear whether the publications listed in Block 16 of the tender form, and identified as ICC # 17, ICC # 18 and ICC # 101, were in fact tenders. The carrier corrected the tender by writing in ink the word "Tender" next to the three referenced publications, and then refiled it on or about 11 June 1985. This tender was reviewed and approved by Roy Van Horn, a former MTMC employee, on 21 June 1985, and distributed on 25 June 1985. As stated above, the distribution was made only to the area commands and GSA.

Declaration of Julian Jolkovsky, Mar. 22, 1990, ¶ 3.

Plaintiff's rejoinder in its brief is that the stamps on the tender are inconclusive. Even assuming the validity of plaintiff's contention, Mr. Jolkovsky's declaration stands unrefuted. Argument of counsel is an insufficient response to a showing made by affidavit in summary judgment proceedings. The Federal Circuit held in *Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 1404 (Fed.Cir.1984), that assertions of counsel cannot substitute for factual statements under oath to establish a genuine issue of fact.

The significance of the applicability of Tender PENC Nos. 88 and 136 during Period Nos. 1 and 2, respectively, is twofold. First, each provides for a flat rate for a given truckload weight, *i.e.*, Tender PENC No. 88 provides that a truckload of 20,000 pounds carries a flat rate of $254.00. Second, the Government is entitled to the lowest published rate applicable. *Great Northern Ry. Co. v. United States*, 170 Ct.Cl. 188 (1965); *U.S. Lines Operations, Inc. v. United States*, 99 Ct.Cl. 744 (1943), *cert. denied*, 321 U.S. 775, 64 S.Ct. 616, 88 L.Ed. 1069 (1944); *Missouri Pacific R.R. Co. v. United States*, 71 Ct.Cl. 650 (1931).

GSA disallowed charges based on the rates at which plaintiff billed and was paid, taking the position that plaintiff was entitled to no more than the flat rate applicable to weight of a given truckload carried in Tender PENC Nos. 88 and 136.

Indisputably, neither Tender PENC Nos. 88 nor 136 provided for special services. However, each included the following provision under paragraph 20 GENERAL TERMS AND CONDITIONS:

> b. Charges and Allowances
>
> Except as otherwise provided in this tender, shipments made under the provisions of this tender are entitled to those additional services and privileges as are provided in separately published tariffs or tenders to which the carrier(s) participates, including additional tariff or tender charges, rules and regulations applicable to such services and privileges.

The effect of this provision is that NCAD had the right to avail itself of the special services in plaintiff's published tariff ICC PENC 200–B.

Plaintiff takes the position that ICC PENC 200–B is applicable and that it billed for ALOC transportation services pursuant to this tariff. Defendant projects the flat rate in Tender PENC Nos. 88 and 136 into the provision of special services pursuant to ICC PENC 200–B. On this basis plaintiff could have been expected to argue not that the tenders were inapplicable, but that the incorporation of ICC PENC 200–B pursuant to paragraph 20 b. of each tender permitted NCAD to avail itself of services beyond those specified in the tenders; if NCAD did so, plaintiff would not be compensated at a flat rate, but at the rate stipulated in the applicable published tariff. This is the plain meaning of paragraph 20 b. and the one the court adopts.

III. *The requirement that GBL's be annotated to reflect the provision of special services*

41 C.F.R. § 101–41.302–6(a) (1989), provides in full:

> Additional information or facts necessary to support higher charges resulting from accessorial or special services or-

dered and furnished incident to the line-haul transportation shall be inscribed on the face of the GBL in the section designated "Marks and Annotations" or on the reverse side of the GBL beneath the caption "Special Services Ordered." The inscription shall contain the name of the carrier upon whom the request was made and the kind and scope of services ordered and shall be signed by or for the person ordering the services. *If such an inscription is impractical, a statement containing the information and bearing the number of the covering GBL and signed by or for the person who ordered the services will be acceptable.*

(Emphasis added.) Item 30 of ICC PENC 200–B, "SECTION 1 SPECIAL EXPEDITED SERVICES," provides, in pertinent part:

> (3) When a shipment is tendered under this section, the request must be given in writing, attached and referred to, or inserted on the Bill of Lading and Shipping Order.

The same provision appears in section 2 governing "EXCLUSIVE USE OF VEHICLES." The parties agreed that pertinent GBL's contain a notation "ROLLER BED ORDERED & FURNISHED." The GBL's were not otherwise annotated.

■ It is the responsibility of the carrier to assure that bills of lading are correct in all respects. *United States v. Southern Pacific Co.,* 325 I.C.C. 200, 209 (1965) (absence of notations on bills of lading did not constitute defect in Government's proof, since their issuance was the responsibility of carrier); *see Ezee Flow Corp. v. Illinois Central RR,* 287 I.C.C. 281, 283–84 (1952) (where bill of lading included notations that were in conflict, agents of carrier were under duty to obtain full and definite instructions from shipper; otherwise carrier was liable for resulting damages); *Exposition Cotton Mills v. Southern Ry.,* 234 I.C.C. 441, 442 (1939) (duty of issuing appropriate bills of lading rests with carrier); *St. Louis Cooperage Co. v. Baltimore & Ohio Ry.,* 161 ICC 258, 259 (1930) (carrier liable for additional charges for failing to obtain definite instructions needed to resolve conflicts in bills of lading).

■ To support its position that the notation referring to roller beds was adequate, plaintiff supplies the Declaration of Harry Grossman, plaintiff's President. He avers the nature of NCAD's ALOC traffic always includes the use of roller bed trailers, as well as expedited service and exclusive use. According to Mr. Grossman, the nature of an ALOC mission makes rapid service essential: "[T]he cargo is specially loaded and must reach its initial destination quickly to be shipped by air to its final destination." Declaration of Harry Grossman, Feb. 2, 1990, ¶ 3. Mr. Grossman explains that ALOC traffic is loaded on Air Force 463L airlift pallets, which are very large (9′ × 7.5′). After AF 463L pallets are loaded, forklifts place them in trailers equipped with roller beds. Such a trailer has rollers that can be raised hydraulically on the bed of the trailer, allowing loaded AF 463L pallets to be quickly rolled into place within the trailer; then the rollers are lowered to secure the cargo in place. Grossman Declaration ¶¶ 4–7. Mr. Grossman further avers:

> NCAD continues to this day to use the notation "ROLLER BED ORDERED & FURNISHED" to indicate ALOC traffic, including the requirement for exclusive use and expedited service, even though it is aware of this lawsuit.

> Long before the two periods of transportation involved in the lawsuit against the Government, and on at least one occasion between January of 1985 and January of 1986, I asked personnel at NCAD why the GBL's did not contain specific notations of all special services involved in ALOC traffic, *i.e.,* not only the "special equipment" roller beds but in addition, "expedited service" and "exclusive use."

> NCAD dispatch office staff told me that the programming of NCAD's GBL-preparation computer would not allow for notations other than "ROLLER BED ORDERED & FURNISHED" to indicate that special equipment, exclusive use and expedited service are requested from the

**540**

carrier for ALOC traffic, and that to make other notations they would have to prepare GBL's "manually."

. . . .

NCAD Transportation Office employees informed me that the GBL notation "ROLLER BED ORDERED & FURNISHED" means that special equipment, exclusive use and expedited service have been requested from the carrier in connection with ALOC service.

Grossman Declaration ¶¶ 12–14, 16.

Mr. Grossman asserts: "The Army agreed to pay Pennco's ICC tariff rates for the special services performed by Pennco after 31 December 1984 from NCAD to Dover AFB." Grossman Declaration ¶ 27. Again, "The Army agreed to pay Pennco its full tariff rate for the special services performed by Pennco beginning in February 1986 from NCAD to Dover AFB." *Id.* ¶ 34. Nowhere in Mr. Grossman's declaration nor in plaintiff's 90 proposed findings of fact appears an explanation of how plaintiff calculated its charges, other than the assertion that they were derived from ICC PENC 200–B.

Defendant is correct that plaintiff cannot establish the adequacy of its annotations of the GBL's by reference to Mr. Grossman's declaration, since the declarant does not identify the NCAD personnel with whom he spoke concerning the annotations, nor the personnel who "agreed" with him to pay plaintiff's tariff rates for special services. The failure to identify these individuals is fatal to plaintiff's proof. *See Haber v. United States,* 17 Cl.Ct. 496, 504–05 (1989) (failure to identify Internal Revenue Service personnel barred plaintiff from relying on their alleged representations), *aff'd,* 904 F.2d 45 (Fed.Cir.1990) (per curiam) (unpubl.). However, plaintiff does not rely solely on Mr. Grossman's declaration.

In response to the GSA audit, plaintiff obtained from Karen E. Brinton, Chief Transportation Division, Directorate of Supply, NCAD, two letters dated October 8, 1987, and December 14, 1987, respectively. These letters were requested by Mr. Grossman and addressed to him. The text of the former letter reads in full:

Reference your letter dated July 28, 1987, requesting certification of Expedited Service and Exclusive Use Requirements for ALOC traffic moved during the periods January 2 thru February 6, 1985 and February 9 thru March 15, 1986, from New Cumberland Army Depot to Dover AFB.

Review of applicable Government Bill of Ladings (GBL's) indicates that rollerbed vans were requested and furnished by Pennco for the periods stated above.

This letter certifies that Expedited Service and Exclusive Use Requirements were requested and provided to this activity by Pennco.

Attached list indicates GBL's reviewed. Asterisk indicates loads not tendered to Pennco.

The second letter reads in full:

Reference your letter, dated November 18, 1987; requesting additional certification of Expedited Service and Exclusive Use Requirements for ALOC traffic moves during the periods January 2 through February 6, 1985 and February 9 through March 15, 1986, from New Cumberland Army Depot to Dover Air Force Base.

Review of the requested Government Bill of Ladings (GBL's) T1662641, T1662646, T1918275, T1918031 and T1918195, indicates that rollerbed vans were requested and furnished by Pennco for the periods stated above.

This letter certifies that Expedited Service and Exclusive Use Requirements were requested and provided to this Activity by Pennco.

Plaintiff argues that these letters satisfy the allowance made in 41 C.F.R. § 101–41.302–6(a), in lieu of an annotation on the GBL's, for "a statement containing the information and bearing the number of the covering GBL and signed by or for the person who ordered the services."

Defendant predicted at argument that recognizing plaintiff's argument would create a "new hole in the law." Plaintiff

rejoined that the Brinton letters "satisfy the intendment of the regulation." All the information required is supplied by an NCAD employee with percipient knowledge. Defendant has made no showing to diminish the accuracy of Ms. Brinton's statements. Rather, defendant argues that plaintiff has failed to make a showing (through Mr. Grossman's declaration) that annotating the GBL's was impractical. Defendant maintains that the regulation contemplates that any such statement would be contemporaneous with and in lieu of an annotation on the GBL's. Therefore, according to defendant, Ms. Brinton's post facto statements authored over two years after the Period No. 1 services had been performed and over one year after those in Period No. 2 should not be accepted to establish plaintiff's compliance with the regulation.

In allowing a statement in lieu of an annotation on the GBL's, the regulation does not restrict the alternative to a contemporaneous statement, although the regulation does contemplate that a statement customarily would be contemporaneous with provision of the special services. While Mr. Grossman's declaration cannot establish the fact that NCAD personnel told him that the computer could not program any notation other than "roller bed ordered and delivered," or establish that it was the responsibility of NCAD personnel—and not plaintiff's own responsibility as the carrier—to annotate the GBL's, his declaration does evidence his understanding of the term. When the annotation was deemed insufficient during the GSA audit, Mr. Grossman obtained Ms. Brinton's written statements. These statements confirm that the shipper ordered and received the services for which plaintiff invoiced. The types of irregularities and misleading information that the regulation seeks to avoid by requiring the shipper to annotate GBL's to reflect provision of special services are not present in this case because of Ms. Brinton's statements. No useful purpose would be served by denying plaintiff payment for provision of special services when NCAD acknowledged that they were provided. This discrepancy identified during the audit should have been satisfied by Ms. Brinton's letters. Accordingly, the court rules that Ms. Brinton's letters satisfy the requirements of 41 C.F.R. § 101–41.302–6(a).

## IV. *Compensation under ICC PENC 200–B*

Defendant asserts: "Pennco based its bills on an entirely different formula [than the rates for provision of specialized services in ICC PENC 200–B] that does not have anything to do with whether special services were requested or provided...." Def's Br. filed Mar. 30, 1990, at 7. Plaintiff billed NCAD based on a Class 65 rate; it thereafter claimed a higher rate, Class 100 TL and now predicates the recovery it seeks on the Class 100 LTL (less than truckload) rate. ICC PENC 200–B stipulates the Class 100 LTL rate as the minimum. Although plaintiff moved for summary judgment complete, plaintiff made no showing that could sustain its entitlement to any rate. Indeed, defendant supplies the only analysis of how plaintiff computes its entitlement. A chasm separates the parties on this issue.

Defendant's position is that NCAD was entitled to a rate by weight or a minimum rate taking the form of a ICC PENC 200–B Class 100 LTL rate for the Harrisburg rate group, 12,000 pounds, on a flat rate basis. Item 30, § 4 of ICC PENC 200–B provides, in pertinent part:

*SECTION 4 CHARGES AND CONDITIONS:*

(1) The charge shall be computed on the truckload basis (Note [C]) but shall in no case be less than the following:

| RATE GROUPS | MINIMUM CHARGE WILL BE THE CLASS 100 LTL RATE AT.... |
| --- | --- |
| Harrisburg | 12,000 pounds.... |

....

NOTE C: The term "Truckload basis" as used herein means the charge computed at the applicable truckload rate *based on actual weight but not less than the authorized minimum weight,* subject to the provisions of Item 301 in case of mixed shipments. Where more than one truckload rate and minimum weight are provided, the

truckload basis shall be the charge computed at the highest minimum at the applicable rate for the minimum weight. On shipments subject to AQ rates (or which are the same on all shipments weighing 6,000 pounds or more), charges shall be computed at the applicable rate and actual weight but shall in no case be less than the minimum charges set forth in Section 4, Paragraph (1).

(Emphasis added.)

Defendant takes the tack that because Tender PENC Nos. 88 and 136 set a flat rate based on "any quantity," and not the actual weight of the load, "truckload basis" must be construed as the rate per truckload—in this case a flat rate. Defendant's construction results in a "special" minimum flat rate per truckload of $864.00 per ICC PENC 200–B Class LTL rate for the Harrisburg rate group, 12,000 pounds, against a rate of $254.00 flat per truckload rate in Tender PENC No. 88 and a minimum $112.75 rate in Tender PENC No. 136, so that the "special" minimum would apply under defendant's approach. Plaintiff's claim to the Class 100 TL rate for the Harrisburg rate group, 12,000 pounds, would yield charges in excess of $864.00 per truckload. Defendant's construction of section 4 necessarily reads out Note C, which defines "Truckload basis" as "the charge computed at the applicable truckload rate based on actual weight but not less than the authorized minimum weight."

■ Defendant's approach is inconsistent with the language of Item 30 and, in fact, rewrites it to achieve the desired result of projecting the Tender PENC Nos. 88 and 136 flat rates into ICC PENC 200–B. The tariff is incorporated into the two tenders insofar as it enables NCAD to obtain special transportation services if plaintiff has a tariff on file offering them. NCAD, however, is guaranteed the lowest published rate under the applicable tariff, not a government discount off the lowest published rate.

## CONCLUSION

Based on the foregoing, plaintiff's cross-motion for summary judgment is granted in part, and defendant's motion for summary judgment is denied in part consistent with this opinion. Ruling is deferred on the issue of the amount of plaintiff's charges computed on the truckload basis (actual weight) at the Class 100 TL rate, as well as the ultimate recovery to plaintiff taking into account the monies withheld and the applicability of interest. Accordingly,

IT IS ORDERED, as follows:

1. By June 18, 1990, plaintiff shall submit an itemized computation of the amount of its invoices pursuant to ICC PENC 200–B Item 30, § 4 with sufficient explanatory material to enable defendant's auditors to verify plaintiff's calculations. *See* Appendix C, ¶ 2(G)(3). In no event may plaintiff rely on any materials sustaining its claimed charges that have not already been made a part of the record, since defendant has moved for summary judgment on the basis that plaintiff thus far has failed adequately to substantiate its invoices. Plaintiff shall show its computation of the amount of recovery, including interest.

2. Defendant may respond by July 18, 1990. Defendant may address the applicability of interest.

3. Plaintiff may reply by July 27, 1990.

4. Service of all pleadings shall be by hand delivery.