**658**

**NORTHLAND CAMPS, INC.**
**v.**
**The UNITED STATES.**
**No. 450–72.**

United States Court of Claims.
June 19, 1974.

Jon A. Kerr, Washington, D. C., for plaintiff; John B. Tacke, Washington, D. C., attorney of record. Hudson, Creyke, Koehler, Brown & Tacke, Washington, D. C., of counsel.

Clarence T. Kipps, Jr., Washington, D. C., for National Security Industrial Ass'n, amicus curiae. John L. Rice and Miller & Chevalier, Washington, D. C., of counsel.

David R. Schlee, Washington, D. C., with whom was Acting Assistant Atty. Gen. Irving Jaffe, for defendant. Rose Adewale-Mendes, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG, and BENNETT, Judges.

## ON PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S SECOND COUNTERCLAIM

DAVIS, Judge, delivered the opinion of the court:

This case, like Roscoe-Ajax Constr. Co. v. United States, Ct.Cl., 499 F.2d 639, calls upon us to determine whether, under S & E Contractors, Inc. v. United States, 406 U.S. 1, 92 S.Ct. 1411, 31 L. Ed.2d 658 (1972), the Government can maintain a counterclaim challenging a holding of the Armed Services Board of Contract Appeals which was favorable to the plaintiff contractor. Northland Camps, Inc. had an agreement with the Army Corps of Engineers to manufacture 191 three-bedroom trailer-type houses, to be used as family housing at Kwajalein in the Marshall Islands. The trailers were all delivered and periodic payments made to plaintiff, but the contracting officer withheld $76,500 on the ground that the delivered items had defects and deficiencies for which the claimant was liable.

The matter came before the ASBCA and in the course of those proceedings the parties settled part of the controversy, leaving the residue for determination by the Board. That forum found in a decision handed down in February 1972 that the defendant was entitled to $38,847.38 for the cost of repairing certain defects (ruled to be Northland's responsibility) in the trailer air

conditioners,[1] but at the same time held plaintiff not responsible for the costs (said by the Government to be $24,000) of providing side windshields and front-baffle plates on the same air conditioners. The contractor was also held accountable for $19,787 for defects in the trailer floor tile and $14,401 for repairing damage in transit. The total allowed the Government was $73,035.08; subtracting this from the amount withheld ($76,500) left $3,464.62 for the contractor. This was the Board's award.

Plaintiff brought this action to reverse the Board's adverse determinations as to the air conditioners, the floor tile, and the damage in transit. Defendant filed a second counterclaim attacking the ASBCA's refusal to grant it relief on the side windshields and front-baffle plates for the air conditioners. Plaintiff has moved to dismiss this counterclaim as failing to state a proper cross-demand under *S & E Contractors*.[2]

Part II of our opinion in *Roscoe-Ajax Constr. Co., supra,* discusses and sketches the criteria for distinguishing between, on the one hand, those aspects of a board decision, favorable to the contractor, which the Government may reopen (by way of counterclaim) when the claimant brings a suit to upset unfavorable parts of the administrative determination, and, on the other hand, those other aspects of a board decision which the defendant may not challenge. We confine this opinion to the application of those guidelines to the present case.[3]

Plaintiff's claim (in relevant part) and defendant's counterclaim both con-cern the air conditioners, which were, of course, but one of the many items going into the three-bedroom trailer type houses forming the subject of the contract. It is undisputed that many of these air conditioners did not work properly. The holding of the ASBCA was that these failures were due to the four problems held to be plaintiff's responsibility (see note 1, *supra*) and also to the lack of side windshields and front baffles (held not to be plaintiff's responsibility). The difference in result came about because the Board considered the first four problems to be latent defects in plaintiff's design, while it deemed the fifth to be neither a design defect nor latent.[4]

It is clear to us that the air conditioner difficulties on which plaintiff sues and the air conditioner problem presented in the counterclaim are all integral parts of the same contract dispute and should be decided together. They all relate to the very same part of the trailer-type houses. More than that, the Board found that a prime difficulty with the conditioners was the overheating and burning out of the condenser fan motors; this was caused by the grounding and shorting of the capacitors; and in turn this was due to the interaction of the first two defects described in note 1, *supra* (ascribed to plaintiff, and as to which it brings this action) and of the lack of side shields and front baffles (not attributable to plaintiff, and the subject of the counterclaim). It is hard to envisage a closer physical connection and interrelationship.

1. The main defects related to (1) the mounting of the capacitors and (2) the mounting of the lead wires from the capacitors. Two other air conditioner design defects were also found.

2. Defendant's first counterclaim is only tangentially involved in this motion, and will be disregarded for present purposes. There has, as yet, been no inquiry in this court into the merits of either the claim or the second counterclaim, and it goes without saying that nothing said in this opinion is intended to decide any facet of the merits of claim or counterclaim, or to intimate any opinion whatever on those questions.

3. As in *Roscoe-Ajax* there is no suggestion of fraud or bad faith.

4. The factual finding was that the "failure to install side windshields and front baffles at the factory, was in direct response to the Government's statement at the pre-proposal conference and were not included in the requirements for design."

The Board obviously viewed these issues as part of the same fabric. Its opinion treats them together, under the heading "Defects and Latency" and the subheading "Air Conditioners." One significant paragraph sums up: "Of the three factors causing fan motor overheating and failure of motors and capacitors, we find that two of them, mounting capacitors directly in the airstreams without corrosion protection, and terminal leads that rubbed, abraded and shorted against the capacitor casings, to be defects in design which were latent. The third so-called defect, failure to install side windshields and front baffles at the factory, was in direct response to the Government's statement at the preproposal conference and were not included in the requirements for design. Therefore they were not defects. Neither was their absence latent."

In addition, the plaintiff's petition in this court expressly raises two issues, involving legal and factual considerations, which are common to both the claim (at least the part of it relating to the air conditioners) and the counterclaim. The first is whether the contractor was responsible at all for the design of the trailers; the other was whether any of the defects and deficiencies in the air conditioners was latent. In passing on those questions, the court could conceivably take an overall position different from the Board's and, if so, the court position could have a direct bearing on the correctness of the Board's holding on the subject matter of the counterclaim.

We have said enough to show that the air conditioner part of the plaintiff's claim and the defendant's counterclaim are so legally and factually intertwined that they form a unit which should be decided together. The contract dispute plaintiff proffers for judicial decision is whether and to what extent it should have responsibility for the failure of the

conditioners.[5] It has not fully accepted, but rather attacks, the ASBCA decision of that dispute. The dispute is not over, but on the contrary is still vital and unsettled. Both the claim and the second counterclaim present related phases of that still-existing dispute, and the Government is therefore entitled to maintain and pursue its own demand.

Plaintiff's motion to dismiss the second counterclaim is denied and the case is returned to the trial division for further proceedings.

---

5. Plaintiff's brief puts it thus: "The question is not what caused the failures of the air conditioning units, but whether those failures were attributable to latent defects in design for which the contractor is responsible."