**FRED A. ARNOLD, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 578–86 C.

United States Claims Court.

Aug. 6, 1991.

Adrian L. Bastianelli, III, Washington, D.C., for plaintiff.

Mark A. Melnick, with whom were Director David M. Cohen and Asst. Atty. Gen. Stuart M. Gerson, Dept. of Justice, Washington, D.C., for defendant.

## OPINION

WIESE, Judge.

### I

In an earlier opinion in this case, this court examined the correctness, under the standards of review prescribed by the Wunderlich Act, 41 U.S.C. §§ 321–322 (1988), of a decision of the Armed Services Board of Contract Appeals. The decision in question had denied substantially all of the contractor's (plaintiff's) claims for equitable adjustments in contract price and time as well as the Government's claim for liquidated damages. We affirmed the board's denial of the contractor's claims and reversed its denial of the Government's claim. *Fred A. Arnold, Inc. v. United States*, 18 Cl.Ct. 1 (1989), *aff'd in part and rev'd in part*, 86–1 B.C.A. (CCH) ¶ 18,701. The case was then returned to the board for a determination of the amount due the Government on its counterclaim.

The board's task, however, has not yet been accomplished. It appears that the board read the court's remand order more narrowly than was intended and therefore confined the decision on quantum to the two remaining claims (both minor in amount) that had not been quantified in its earlier decision. The larger issue—the netting of accounts and ascertainment of the amount ultimately due the Government on its claim for liquidated damages—was left unaddressed. (The board's decision on quantum was issued as an unpublished opinion on November 15, 1990).

It is in this incomplete state of resolution that the case is once again brought here by plaintiff. Aided now by new counsel, plaintiff asks that we reconsider that part of our earlier decision reversing the board's disallowance of the Government's claim for liquidated damages. Specifically, plaintiff contends that the liquidated damages issue (introduced in these proceedings by way of a Government counterclaim) involves questions independent of those presented in the claims appealed by the contractor. Therefore, the argument continues, under the rule established by *S & E Contractors, Inc. v. United States*, 406 U.S. 1, 92 S.Ct. 1411, 31 L.Ed.2d 658 (1972), the Government's counterclaim represents an impermissible enlargement of the scope of the contractor's suit. Accordingly, plaintiff asks us to dismiss the Government's counterclaim for lack of a contractual right to contest the board's decision. The Government opposes plaintiff's motion and urges that we dismiss the motion, either for lack of timeliness or for lack of merit. In addition, the Government, by separate motion, asks that we enter judgment in its favor for the amount claimed due on its counterclaim.

The issues have been briefed by the parties and oral argument was heard on July 23, 1991. At the conclusion of the argument, the court announced its decision in defendant's favor. We restate here the reasons for that decision.

### II

In *S & E Contractors, Inc. v. United States*, 406 U.S. 1, 92 S.Ct. 1411, 31 L.Ed.2d 658 (1972), the Supreme Court ruled that the Government could not appeal a decision on a "disputes clause" claim that had been resolved by a contract appeals board (or other final deciding authority) in a contractor's favor. Both the language of the disputes clause and settled administrative practice were held to render such board decisions final and binding on the Government, absent the contractor's fraud

or overreaching. 406 U.S. at 9–10, 20, 92 S.Ct. at 1416–17, 1422.

Subsequently, in *Roscoe–Ajax Constr. Co. v. United States*, 204 Ct.Cl. 726, 499 F.2d 639 (1974), a case involving a contractor's request for judicial review of part of a contract board decision, the Court of Claims decided that the rationale of *S & E Contractors, Inc.* barred the Government from challenging any aspect of a contract board's decision that fell outside the scope of the contractor's own appeal. The essence of *S & E*, explained the court, lay in its emphasis upon the finality accorded to a settled contract "dispute." Hence, an appeal by the Government would lie only where it concerned the same dispute that formed the basis of the contractor's appeal.

The concept of the " 'same dispute' as distinguished from a 'separate dispute,' " the court went on to explain, "encompasses, in general, those aspects of a controversy which are so related to one another that they form parts of a whole and ought to be decided together." 204 Ct.Cl. at 742, 499 F.2d at 646. The contractor in *Roscoe–Ajax* was challenging only the board's overall method of calculating the amount due for a series of change orders and not the root issue of entitlement or even the amount due for any single change order. Therefore, the Government could not contest the quantum of the equitable adjustments which the board had allowed for the individual changes. As the court saw it, the claim and counterclaim were not so connected as to constitute elements of the same dispute; they did not share the same facts or implicate the same legal rules and principles. "The only controversy plaintiff stirs here is an isolated and separable dispute, involving computation and the totalling of the individual sums, and only as to that separate question can the Government present its own counter-demand." 204 Ct. Cl. at 747, 499 F.2d at 649.

Plaintiff contends that the analysis which shaped the result in *Roscoe–Ajax* is equally applicable to this case. The argument is that the Government's entitlement to liquidated damages rests on facts and legal principles distinct from those governing the merits of the appeals presented by the contractor. Therefore, plaintiff asserts that the Government's counterclaim constitutes a separate dispute which may not be reexamined here. As indicated, the Government sees this argument as being both untimely and without merit. We agree on both counts.

■ Speaking first to the timeliness of plaintiff's motion, we think it clear that the motion comes much too late. In the initial briefing of the case before this court, the Government asserted its right to raise the liquidated damages issue by claiming that "[t]he counterclaim [for liquidated damages] arises from the same dispute as plaintiff's claim and therefore is properly brought under *S & E Contractors, Inc. v. United States*, 406 U.S. 1, 92 S.Ct. 1411, 31 L.Ed.2d 658 (1972); *Roscoe–Ajax Construction Co. v. United States*, 204 Ct.Cl. 726, 499 F.2d 639 (1974); *Northland Camps, Inc. v. United States*, 204 Ct.Cl. 761, 499 F.2d 658 (1974)." The Government's assertion went unchallenged. Indeed, the entirety of plaintiff's argument on liquidated damages focused on the correctness of the board's decision and not on the Government's basic right to have raised the question in the first instance. Plaintiff's conduct amounts to a waiver of a nonjurisdictional defense. *See, e.g., Stein Bros. Mfg. Co. v. United States*, 162 Ct.Cl. 802, 806–07, 337 F.2d 861, 862–63 (1963); *Keco Industries, Inc. v. United States*, 199 Ct.Cl. 1020 (1972).

Plaintiff argues against this conclusion. Plaintiff points out in its answer to the counterclaim, that it did deny the Government's allegation that the counterclaim grew out of the same transaction on which plaintiff had based its appeal, the so-called "Balcony" claim. The problem, however, is that this denial was never pursued. As we have already indicated, plaintiff said nothing about the *S & E* issue either in its brief or in oral argument, despite the fact that the Government had squarely identified the issue as one essential to its right to proceed. Given the Government's assertions, plaintiff had an obligation to speak and its failure to do so constitutes an abandon-

ment of any argument its responsive pleading may initially have intended to raise. *See Nossen v. United States,* 189 Ct.Cl. 1, 18, 416 F.2d 1362, 1371 (1969), *reh'g denied,* 191 Ct.Cl. 198, 422 F.2d 1340, *cert. denied,* 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970); *Hunt v. Jaglowski,* 926 F.2d 689, 690–91 (7th Cir.1991), *reh'g en banc denied,* 1991 WL 28375 (7th Cir. April 29, 1991) (LEXIS, Genfed library, Usapp file). The motion to dismiss the counterclaim comes too late.

■ But even if we consider the issue on its merits, plaintiff cannot prevail—this case is not another *Roscoe–Ajax.* As noted above, the contractor's appeal in that case focused on a mechanical aspect of the board's decision—the correctness of the board's accounting as reflected in its treatment of certain costs as duplicative—and not upon the merits of the matters adjudicated. Here by contrast, the contractor's appeals go to the very foundation of the board's decision. The appeals revisit the underlying disputes, thereby opening for reexamination an issue that made up part of each of the contractor's various claims before the board, namely, entitlement to extra compensation for alleged Government-caused delay. Indeed, taken together the contractor's claims sought compensation for a period of delay far more extensive than the contract overrun period that actually occurred here.[1] Thus delay—and the responsibility for it—was directly put in issue by the contractor.

Since the mirror image of the contractor's demands for compensation for delay is the Government's demand for liquidated damages, it follows that the Government is now entitled to present that demand here. These are opposing contentions, the resolution of which ultimately draws on the same set of underlying facts. In short, the competing demands for compensation for delay may legitimately be viewed as the same dispute.

The contractor argues against this conclusion. It contends that the subject of the Government's counterclaim is not the general question of entitlement to liquidated damages but rather the specific question addressed by the board's decision, *i.e.,* whether the liquidated damages rate specified in the contract constituted a penalty. And since this issue, in plaintiff's view, has no connection to the issues raised by the contractor's appeals, the counterclaim is improper.

We cannot endorse this argument. For purposes of the *S & E* rationale, the boundaries of a dispute are set by the facts put in issue by the contractor and the relief asked for with respect to them. Where, as here, a contractor brings into issue the question of whether it is entitled to an affirmative recovery on its delay claims, it necessarily brings into issue the Government's reciprocal right to such damages: entitlement in either case is governed by the same facts.

The contractor further contends that even if we characterize the Government's counterclaim as a dispute about factual entitlement to liquidated damages rather than a dispute about the allowability of such damages as a matter of law, that controversy still would be factually distinct from the disputes presented by the contractor's appeal. The argument is that a claim for liquidated damages is an "overall" claim meaning, a claim defined through the cumulative effect of a series of delays, each delay, in turn, arising out of separate contract events. Therefore, as the contractor sees it, a demand for liquidated damages is a distinct claim, wholly separate from the delay aspects of its constituent elements. Thus, it is a claim forbidden by *Roscoe–Ajax.*

This too is an analysis we cannot endorse. Although a liquidated damages claim may indeed be described as an overall claim, it is nevertheless a claim that is to be measured by the sum of its parts. And, where all the contributing parts are put in issue—as they were here—then the

1. The Government's claim for liquidated damages extends from October 18, 1976 through November 21, 1977—a contract overrun period of 399 days that was devoted to the repair and rebuilding of misconstructed balconies. The contractor's appeals, by contrast, sought delay damages, unadjusted for a claimed acceleration of effort, of 899 days.

Government may properly look to the same contract events addressed by the contractor's claims to reassert its own claimed entitlement with respect to those events.[2]

## III

We turn now to the Government's motion requesting the entry of judgment on the counterclaim for liquidated damages. Plaintiff opposes the motion contending that the board still needs to decide certain quantum issues bearing on the amount due the Government on its counterclaim. These issues are said to include Government administrative delays that contributed to the overrun period, delays occasioned by job-site vandalism attributable to faulty Government security, and, the contracting agency's claimed failure to mitigate damages. Plaintiff states that these issues, once factually established through proof at trial, will significantly diminish the amount of the Government's entitlement to liquidated damages. In addition, plaintiff contends that several months prior to the end of the period for which liquidated damages have been claimed, the contracting agency assumed occupancy of the building in order to proceed with a necessary repainting of the building's interior—an item of rework not chargeable to plaintiff. The argument is that this "beneficial occupancy" defeats the Government's entitlement to liquidated damages for the period after such occupancy began.

■ The arguments plaintiff makes cannot be heeded. It is plain from a reading of the board's initial decision that the matters plaintiff now raises either were or should have been presented to the board at that earlier time. As to the contractor's principal assertion—that Government delay contributed to the 339 day overrun (the period for which liquidated damages are sought)—this clearly was an issue the board examined and decided. Here are some of the board's determinations on the

point; we begin with its statement of plaintiff's evidentiary burden:

It is essential that appellant, when claiming a time extension for the purpose of avoiding liquidated damages, must not only show that it experienced overall project delay but that the delay was attributable to an excusable cause. For example, since we have concluded that appellant is responsible for these [balcony] repairs, appellant may reduce the 399 days to the extent that the Government-caused delays precluded earlier completion of the balconies. [86–1 B.C.A. (CCH) ¶ 18,701, at 94,043.]

The board then went on to assess the state of plaintiff's proof:

Having already determined appellant to be responsible for the balcony deficiencies due to a failure to comply with the contract requirements, it remains for us to inquire whether appellant can show some other basis for time extensions beyond 18 October 1976 [the date liquidated damages began to accrue]. It is essential that appellant, when claiming a time extension for the purpose of avoiding liquidated damages, must not only show that it experienced overall project delay but that the delay was attributable to an excusable cause. It is necessary, therefore, that evidence describing such delay effects together with evidence of causation be presented in order for us to reach the type of conclusions appellant requests of us. We require some means of understanding the facts surrounding the delay issues appellant has put before us. Appellant has failed to meet its burden. Indeed, appellant failed to adequately describe any basis for a time extension beyond that provided by the aforementioned Contract Modifications. [*Id.* at 94,043.]

Finally, in conclusion, the board had this to say:

[First] ... [a]ppellant not only failed to show any basis for a time extension dur-

**2.** Plaintiff also contends that if the individual claims and the issue of the amount of liquidated damages had been tried in separate proceedings then the Government could not have pursued its counterclaim. The court does not agree with this contention. The Government's right to present a counterclaim is governed solely by the scope of the contractor's appeal and not by the way the contract issues were docketed with the contract appeals board.

ing the 399 day post–18 October 1976 time frame, as we have found, the facts do not permit such a conclusion.

. . . .

[Second,] [b]ased upon these thorough analyses [a reference to the critical path analyses prepared by the Government's expert], we are able to find corroborating support for our concluding that the 399 day post–18 October 1976 period during which liquidated damages were assessed should [not][3] be reduced. Appellant, as we have found, failed to support such a reduction. [*Id.* at 94,044.]

Considered in light of the above-quoted statements from the board's decision, plaintiff's argument that quantification of the Government's counterclaim must await further fact-finding on the issue of Government-caused delays cannot succeed. That issue has been fully dealt with by the board.

■ As to the contention that quantification of the Government's counterclaim still requires resolution of a beneficial occupancy issue, this too is an argument that cannot succeed. The argument comes much too late. We note, to start with, that the Government's occupancy of the building for part of the period for which liquidated damages are claimed was an issue that the contractor had raised before the board. That, at least, is the conclusion one must draw from the statements appearing in plaintiff's original brief before this court.[4] Accordingly, the issue here is not that the matter was never presented to the board,

but rather that it was never decided by the board.

And, as to this last point, it is now too late to correct the problem. Any disagreement the contractor may have had with the board's disposition of the issue should have been raised in the initial briefing of the case in a manner sufficient to alert the court to the issue it was being called upon to decide. An "issue must be raised with sufficient specificity and clarity that the tribunal is aware that it must decide the issue. . . ." *Wallace v. Department of Air Force,* 879 F.2d 829, 832 (Fed.Cir.1989). That was never done. The question was barely touched upon in plaintiff's brief and then only in words so dim as to leave the issue in almost total obscurity.[5] And, it is there that the issue must remain. To do otherwise is to make litigation a never ending process.

■ Another point plaintiff raises in opposition to the entry of judgment on the Government's counterclaim derives from the text of the contract's "Interest" clause. That clause reads in pertinent part as follows:

Notwithstanding any other provision of this contract, unless paid within 30 days all amounts that become payable by the Contractor to the Government under this contract (*net of any applicable tax credit under the Internal Revenue Code*) shall bear interest at the rate of six percent per annum from the date due until paid and shall be subject to adjustments as provided by Part 6 of Appendix

---

3. The word "not" has been added to the quoted material because its omission from the original text is an obvious oversight.

4. The words we refer to occur in the next-to-last paragraph of plaintiff's brief (filed July 11, 1989) where it said the following about the Government's occupancy of the building for purposes of interior repainting:

Late in 1976 the Navy declared its specifications for interior painting to be so defective that a satisfactory result could not be obtained by following them. . . . As a consequence, while Plaintiff performed the exterior building conversion [a reference to the balcony repair work], the Navy caused the entire interior of the building to be repainted under a competitively bid contract and thereby effectively took beneficial occupancy. Such ac-

tion, of course, defeats liquidated damages for the period after beneficial occupancy began.

The facts regarding beneficial occupancy are not set out in Plaintiff's brief because in addition to liquidated damages they relate only to the painting claim (ASBCA No. 23061), which the Board did not consider. *The relevant facts are stated on pages 64–65, 67, and 71 of Plaintiff's 25 June 1984 original brief to the ASBCA (Appendix E). Also see pages 81–84 of Plaintiff's 26 November 1984 reply brief to the ASBCA (Appendix F).* (emphasis added).

5. The entirety of plaintiff's reference to the beneficial occupancy issue appears in the immediately preceding footnote.

E of the Armed Services Procurement Regulation, as in effect on the date of this contract. (emphasis added).

Plaintiff interprets this clause, in particular the underscored language, "net of any applicable tax credit under the Internal Revenue Code," as contemplating the creation of a tax credit generated as a consequence of the contractor's repayment of money to the Government. It is plaintiff's further position that determination of the amount of this credit is a task for the board and therefore quantification of the Government's counterclaim must await the completion of this effort.

The argument is not correct. The Interest clause does not envision the creation of a tax credit in the contractor's favor based on any pay back transactions with the Government. Indeed, tax credits cannot have a contractual origin; they are exclusively creations of the legislature. *See New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934). All that the clause means to achieve in its reference to a "tax credit" is a recognition of the contractor's right to use any existing tax credits granted by the Internal Revenue Code as an offset against money owed the Government. The clause specifies that interest shall accrue in the Government's favor on any balance remaining to be paid by the contractor.

Further, assuming the contractor has such existing credits, an adjustment for them may easily be taken into account by the parties in the payment of the judgment. There simply is no need to return the case to the board for what would amount to no more than an accounting reconciliation.

All the figures necessary to determine the amount due the Government on its counterclaim have been established by the board's prior decisions. Since no further fact-finding is required, a remand to the board is unnecessary. We therefore proceed here with determining the amount due the Government on its counterclaim. The recitation that follows relies on the specific dollar amounts established by the board for each of the claims it decided. For ease of reference, we include the relevant citation.

### Amounts Due The Contractor

*Global Claim*—$30,000 due under Modification P 00010 (86–1 B.C.A. (CCH) ¶ 18,701, at 94,009 (Finding 29) and 94,034 ("Decision")).

*Catch Basins Claim*—$770 (A.S.B.C.A. decision of November 15, 1990 (unpublished)).

### Amounts Due The Government

*Liquidated Damages*—$689,472 (86–1 B.C.A. (CCH) ¶ 18,701, at 94,033 (Finding 199) and 94,043 ("Decision")).

*Balcony Testing*—$3,641.76 (86–1 B.C.A. (CCH) ¶ 18,701, at 94,022 (Finding 121) and 94,045 ("Summary")).

*Balcony Corrective Design*—$12,450 (86–1 B.C.A. (CCH) ¶ 18,701, at 94,024 (Finding 136) and 94,045 ("Summary")).

*Balcony Corrective Design Drawings*—$4,500 (86–1 B.C.A. (CCH) ¶ 18,701, at 94,-024 (Finding 137 and exhibit references therein) and 94,045 ("Summary")).

*Shower Valves*—$10,248.50 (A.S.B.C.A. decision of November 15, 1990 (unpublished)).

Based on the foregoing, the Government is entitled to payment on its counterclaim in the amount of $689,541.76, together with interest at the rate contemplated under General Provision 49 of the contract, measured from January 12, 1982 (the date of the Contracting Officer's final decision) to the date of payment.

■ With respect to the inclusion of interest as part of the award, some additional words are necessary. During the oral argument of the instant motions, the contractor for the first time raised the contention that the Government was not entitled to recover interest as part of its counterclaim because no formal "demand" for payment of the underlying debt had ever been presented to the contractor. We permitted the contractor to file a supplemental brief addressing this point and, accordingly, consider it here.

The argument relies, first of all, on the language of the Interest clause which goes on to say (in the text immediately following the previously quoted material) that

"[a]mounts [payable to the Government by the contractor] shall be due upon ... (ii) the date of the first written demand for payment, consistent with this contract." Under the terms of the clause then, the Government's entitlement to interest is tied to a written demand for payment of the debt.

Second, the contractor contends that the contracting officer's final decision of January 12, 1982 does not satisfy the criteria of a written demand. Under the applicable procurement regulations (in this instance the Armed Services Procurement Regulations in effect in 1975—the year of contract award), a written demand is identified as a separate administrative step initiated after the unilateral assertion of entitlement contained in a contracting officer's decision. Specifically, a demand must explain the bases for the asserted entitlement, inform the contractor of the liability for interest, and notify the contractor that it may propose a payment schedule when immediate payment cannot be made or when the amount is disputed. Armed Services Procurement Regulations, 32 C.F.R. § 163.106 (1974). Since no demand was made in this case—at least none meeting the specific criteria prescribed by regulation—the argument is that no interest may be collected.

We reject the argument. Although the regulations do contemplate the formalization—by a written demand—of the indebtedness asserted against a contractor in a contracting officer's final decision, it is clear that the omission of that administrative step is not fatal to the Government's right to recover interest. The regulations specifically recognize the possibility that a demand may not be received by the contractor and, in such event, prescribe an interest accrual date that is "fair and reasonable." The pertinent Armed Services Procurement Regulation, 32 C.F.R. § 163.-122 (1974), reads in part as follows:

It could happen occasionally that ... a demand ... is not in fact received by the contractor, and that the nonreceipt is not

the result of any act or omission on the part of the contractor. In such cases, the due date of the debt and the starting time for accrual of interest thereon will be extended to such time as is fair and reasonable under the particular circumstances.

Given the foregoing, we think the Government is well within its rights in asking for interest on its claim measured from January 12, 1982, the date of the contracting officer's decision. That date marks a point in time more than five years *after* the issue of liquidated damages was first addressed between the parties. It was in December of 1976 that the Government and the contractor entered into an agreement (the so-called "Global Agreement") under the terms of which the contractor agreed to relinquish certain claims in return for additional monetary consideration, additional performance time, the release of previously withheld liquidated damages and the suspension of any further withholding for liquidated damages pending completion of the balcony corrective work and a determination of liability for that work.[6] As the Government now points out, it was not until the contractor chose to repudiate this agreement by challenging its conclusiveness before the contract appeals board that the contracting officer took the protective step of issuing a final decision assessing liquidated damages—a step which the Government, up to that point, had refrained from taking in honor of the promise made in the Global Agreement.

On these facts, we can see no basis for saying that the Government should not be entitled to collect interest on its claim. As already noted, the absence of a formal demand is not critical to the issue of interest entitlement. The only question is the date from which it would be fair and reasonable to mark the running of that interest. In this case, it poses no difficulty to say that interest should run from January 12, 1982, the date of the contracting officer's decision. Indeed, fairness would permit no later date.

6. The "Global Claim" is discussed in greater detail in the court's earlier opinion in this case, *see* 18 Cl.Ct. at 4–5, and in the board's decision, *see* 86–1 B.C.A. (CCH) ¶ 18,701, at 94,007–94,009 and 94,034–94,035.

On that date, the contractor was well aware of the potential liability it was facing and the reasons for that liability. In fact, as we have noted, it had entered into an agreement more than five years earlier under the terms of which the Government had agreed to postpone the collection of liquidated damages until the matter of entitlement was formally resolved. Since it was the contractor that turned its back on that agreement, it could hardly have come as a surprise that the Government would respond in kind by issuing a final decision assessing damages for those sums it had earlier agreed to postpone. To have done less would have been a dereliction of duty.

The contracting officer's decision enumerated the elements of damage claimed by the Government and recited the factual bases for that claimed entitlement. On the facts of this case, that was enough to establish the Government's debt for purposes of interest collectibility; a formal written demand was superfluous.

The Clerk shall enter judgment in favor of the Government on its counterclaim in the amount of $689,541.76, together with interest at the contract rate, measured from January 12, 1982 until the date of payment. The complaint shall be dismissed for lack of merit based on the reasons set forth in the opinion issued in this case on August 15, 1989.